STATE OF NORTH CAROLINA v. DAVID GAINEY

No. 531A00

(Filed 1 February 2002)

**1. Confessions and Incriminating Statements— allegations of harassment, threats, promises—contradictory law enforcement testimony—denial of motion to suppress**

The trial court did not err in a capital first-degree murder prosecution by denying defendant's motion to suppress statements to investigators where defendant alleged that he was threatened, harassed, and told that he could avoid the death penalty by confessing, but there was contradictory testimony from law enforcement officers. The trial court's finding of fact that no promises or offers of reward were made was supported by competent evidence in the record, and the court's conclusion that defendant's statement was voluntary is supported by the finding of fact and the law.

STATE v. GAINEY

[355 N.C. 73 (2002)]

2. **Jury— selection—capital trial—rehabilitation questions— excusal of prospective juror**

The trial court did not abuse its discretion during jury selection for a capital first-degree murder prosecution by sustaining the State's objections to three questions during defendant's attempted rehabilitation of a prospective juror or by excusing that juror. The three questions did not address the issue of whether the prospective juror would be able to return a death verdict under any circumstances and the court properly excused her when she stated unequivocally that she could never return a death sentence.

3. **Evidence— hearsay—explanation of subsequent actions**

The trial court did not err in a capital prosecution for first-degree murder by admitting testimony from the victim's father that someone had telephoned him to say that his son's car would be in a particular place at a particular time where the testimony was admitted not for the truth of the matter asserted, but to explain the action of the witness and the deputies in staking out that location the next morning.

4. **Appeal and Error; Constitutional Law— Confrontation Clause—nonhearsay testimony**

A first-degree murder defendant's contention that the introduction of testimony about an anonymous telephone call to his father violated his constitutional right to confrontation was not properly before the Supreme Court where defendant objected at trial only on the basis of hearsay, and this testimony was proper nonhearsay evidence. Nonhearsay raises no Confrontation Clause concern.

5. **Evidence— expert testimony—firearms identification— admissible**

The trial court did not err in a first-degree murder prosecution by admitting the testimony of an SBI agent regarding two bullets found in the victim, despite defendant's contention that the testimony was based on speculation, where the agent was received without objection as an expert in firearms identification and the agent tested the bullets about which he provided an opinion.

**6. Robbery— dangerous weapon—sufficiency of evidence— killing victim and taking car**

The evidence was sufficient to permit a rational jury to find that defendant robbed the victim with a dangerous weapon where defendant admitted that he called the victim and arranged to meet him; defendant and a friend waited for the victim and pulled a gun when he arrived; the victim was forced into his car with a gun to his head; the friend shot the victim and defendant decided to shoot him twice in the head when he heard him gasping for breath and calling for help; and defendant drove the victim's car until he was apprehended.

**7. Robbery— armed—taking car after victim killed—continuous transaction with murder—sufficiency of evidence**

The evidence was sufficient to permit a rational jury to find that the victim's murder and the act of stealing his car were so connected as to form a continuous chain of events and to support defendant's conviction of armed robbery where the victim was lured to a church so that defendant and a friend could forcibly take his car; the victim was killed soon after; and defendant claimed the car as his own and used the car in a manner suggesting ownership, driving the car until the day he was apprehended.

**8. Kidnapping— first-degree—confinement not inherent in murder—sufficiency of evidence**

The trial court did not err by refusing to dismiss a first-degree kidnapping charge for insufficient evidence that the kidnapping was separate from the killing where the victim was lured to a meeting; defendant put a gun to the victim's head and forced him to drive his own car to another location, where he was taken into the woods; he was shot when he tried to get away; the victim was alive when he was placed in the trunk of the car; and he cried out for help before defendant fired the fatal shots. There was ample evidence of confinement not inherent in the first-degree murder.

**9. Homicide— first-degree murder—second-degree not submitted—evidence of premeditation and deliberation**

The trial court did not err in a first-degree murder prosecution by denying defendant's request for submission of second-degree murder as a possible verdict where defendant presented no evidence; and the State's evidence showed that the victim was

shot six times, that defendant deliberately walked to a car after the victim was wounded to retrieve a gun, that defendant shot the victim twice when he was helpless and crying for help, and that defendant dragged the body into the woods, covered it with leaves and branches, and immediately disposed of the murder weapon and the comforter in which the body had been wrapped. Defendant and an accomplice had talked about stealing the victim's car before the date of the murder and defendant had expressed both before and after the murder his plan to move to California and change his identity.

**10. Homicide— instruction on second-degree murder denied— possibility that jury might not believe all of the State's evidence**

A first-degree murder defendant was not entitled to an instruction on second-degree murder upon the argument that the jury had to pick and choose between pieces of evidence in order to convict of second-degree murder. A defendant is not entitled to an instruction on a lesser-included offense merely because the jury could possibly believe some of the State's evidence but not all of it.

**11. Constititional Law— argument of counsel—concession of guilt—effective assistance of counsel**

There was no error in a capital prosecution for first-degree murder where defendant contended that his counsel made concessions of guilt where counsel merely argued that defendant was guilty as an accessory after the fact if he was guilty of anything. Defendant took counsel's statements out of context and failed to note the consistent theory of the defense that defendant was not guilty.

**12. Kidnapping— first-degree—bases of charge—"and" or "or"**

There was no plain error in a first-degree kidnapping prosecution where the indictment alleged failure to release in a safe place "and" serious injury while the court's instructions joined the phrases with "or." There is no evidence that the jury erroneously considered the charge and, in reality, only one of the two bases was necessary for the State to convict defendant of first-degree kidnapping.

**13. Kidnapping— first-degree—restraint or removal in instruction—confinement in indictment**

There was no plain error in a first-degree kidnapping prosecution where the jurors were instructed on "restraint or removal" of the victim, while the indictment asserted confinement. The evidence and defendant's own admission make it clear that the victim was confined, restrained, and removed and there was no reasonable basis for concluding that any different combination of the terms in the instruction would have altered the result.

**14. Criminal Law— contact between prosecutor's lunch companion and jurors—mistrial denied**

The trial court did not abuse its discretion in a capital first-degree murder prosecution by overruling defendant's motion for a mistrial based on asserted improper contact between two jurors and an individual having lunch with the district attorney. The individual told the court that she was a law student having lunch with a friend who worked in the district attorney's office, that she had attended high school with the two jurors and defendant, and that her interaction with the jurors was limited to telling them that she was in law school and was married. Defendant's trial counsel conceded that he did not believe that the contact was improper.

**15. Appeal and Error— preservation of issues—failure to object at trial—failure to assign plain error**

There was no error in a capital first-degree murder prosecution in the submission of the aggravating circumstance that the murder was committed during the commission of a kidnapping where defendant alleged that there was insufficient evidence of first-degree kidnapping, but did not object at trial based on the insufficiency of the evidence and failed to specifically and distinctly assign plain error.

**16. Sentencing— capital—aggravating circumstances—murder committed during kidnapping—murder committed for pecuniary gain—independent evidence**

The trial court did not err in a capital sentencing proceeding by submitting the aggravating circumstances that the murder was committed during a kidnapping and that the murder was committed for pecuniary gain where defendant argued that the jury was allowed to find both circumstances based upon the same evi-

dence. There was ample independent evidence supporting each circumstance in that the victim was lured to a meeting and was several times restrained, confined, and moved from place to place; the underlying motive was the theft of the victim's car; and defendant took the car and used it as his own after the victim was killed.

**17. Appeal and Error— preservation of issues—failure to object at trial—failure to assign plain error**

The defendant in a capital prosecution for first-degree murder did not preserve for appeal the issue of whether there was sufficient evidence of robbery to support the pecuniary gain aggravating circumstance where he made no objection at trial as to the sufficiency of the evidence and did not specifically and distinctly assign plain error.

**18. Sentencing— capital—use of same evidence for more than one circumstance—no instruction**

There was no error in a capital sentencing proceeding where defendant contended that the court should have instructed the jury that it should not rely on the same evidence to support more than one aggravating circumstance, but the instruction was not necessary because there was distinct and separate evidence supporting both circumstances submitted. Furthermore, defendant did not request the instruction, did not object to the trial court's failure to instruct, did not assign error to the failure to give the instruction, and did not distinctly alleged plain error.

**19. Sentencing— capital—mitigating circumstance—no significant history of prior criminal activity—evidence insufficient**

The trial court did not err in a capital sentencing proceeding by denying defendant's request to submit the mitigating circumstance that defendant had no significant history of prior criminal activity where some of defendant's witnesses indicated that defendant had not been in "bad trouble" and had not been involved with illegal drugs, but defendant offered no evidence of his criminal record. Defendant had the burden of establishing that he had no significant criminal history and did not do so. N.C.G.S. § 15A-2000(f)(1).

**20. Sentencing— capital—mitigating circumstances—mental disturbance—sufficiency of evidence**

The trial court did not err in a capital sentencing proceeding by denying defendant's request that the court submit the (f)(2) statutory mitigating circumstance that the crime was committed under the influence of mental or emotional disturbance. Defendant presented no evidence that he acted under the influence of a mental or emotional disturbance at the time of the murder and his expert witness, who testified that defendant suffered from personality disorders, admitted that he had reservations about his opinions because defendant had not cooperated with the evaluation. A trial court is not required to submit a mitigating circumstance unless there is substantial evidence to support it. N.C.G.S. § 15A-2000(f)(2).

**21. Sentencing— capital—mitigating circumstances—impaired capacity—sufficiency of evidence**

The trial court did not err in a capital sentencing proceeding by denying defendant's request to submit the mitigating circumstance of impaired capacity. where defendant's expert testified that defendant suffered from mixed personality disorder but knew what the act of murder was, and further testified that his evaluation was not reliable because defendant would not tell him anything about the date of the murder. Defendant's statements to officers, his actions in organizing the crime, and his actions after the killing indicate that he was aware that his actions were criminal. N.C.G.S. § 15A-2000(f)(6).

**22. Sentencing— capital—mitigating circumstances—defendant's age—sufficiency of evidence**

The trial court did not err in a capital sentencing proceeding by denying defendant's request for submission of the mitigating circumstance of defendant's age where defendant cited no evidence to support his assertion and there was testimony that defendant had graduated from high school without repeating grades, that he had a stable work history, and that he was the father of five children. N.C.G.S. § 15A-2000(f)(7).

**23. Sentencing— capital—nonstatutory mitigating circumstances—peremptory instructions given as a group**

The trial court did not err in a capital sentencing proceeding by giving peremptory instructions on nonstatutory mitigating circumstances as a group rather than by repeating the instruction

for each circumstance. The trial court went through each of the nonstatutory mitigating circumstances during the trial conference, the court instructed the jury that circumstances "two through seven" existed as the predicate instruction for each of the nonstatutory circumstances, and defendant failed to object at trial when given the opportunity to do so after the instructions were given. Any possible error from failing to repeat the instruction six times was harmless.

**24. Appeal and Error— preservation of issues—failure to object to issues and recommendation as to punishment form**

The Supreme Court did not consider the argument of a first-degree murder defendant that the court did not properly set forth nonstatutory mitigating circumstances on the form for Issues and Recommendation as to Punishment where defendant indicated to the trial court that he had no objections to the form.

**25. Sentencing— capital—instructions—statutory and nonstatutory mitigating circumstances**

The oral instructions given by the trial court, in conjunction with the distinction between the statutory and nonstatutory mitigating circumstances on the issues and recommendation as to punishment form, were sufficient to provide proper instruction for the jurors.

**26. Sentencing— capital—instructions—life imprisonment without parole**

The trial court's instructions in a capital sentencing proceeding, in conjunction with the trial court's response to a jury question, were both clear and consistent with the statutory requirement for the meaning of the term "life imprisonment." Furthermore, the plain meaning of the term suggests that defendant will spend the rest of his life in prison, and the jurors heard "life imprisonment without parole" numerous times. Finally, defendant made no objection at trial and, in a discussion with the court, confirmed that the court had informed the jurors that "life imprisonment means life imprisonment without parole."

**27. Sentencing— capital—nonstatutory mitigating circumstances—rejection by jury not arbitrary**

The rejection by the jury of the nonstatutory mitigating circumstances that defendant had demonstrated love and affection

to certain relatives and that his behavior was impaired by professionally diagnosed emotional or mood disorders did not result in an arbitrary death penalty because the jury is free to find that a nonstatutory circumstance does not have mitigating value even if the evidence is uncontradicted.

**28. Constitutional Law— effective assistance of counsel—failure to object**

The defendant in a capital sentencing proceeding did not demonstrate that his counsel was ineffective in failing to object to alleged errors regarding the admission of statements, jury instructions, and verdict sheets where the alleged errors were without merit, defense counsel's failure to object cannot be said to fall below an objective standard of reasonableness, and the evidence of guilt was overwhelming.

**29. Sentencing— capital—proportionality**

A death sentence was proportionate where the record fully supported the aggravating circumstances found by the jury, there was no indication that the sentence was imposed under the influence of passion, prejudice, or other arbitrary factors, this case is distinguishable from those cases in which the North Carolina Supreme Court concluded that the death penalty was disproportionate, and this case is more similar to certain cases in which a death sentence was found proportionate than to those in which it was found disproportionate or to those in which juries have consistently returned recommendations of life imprisonment. Moreover, it was noted that similarity is not the last word on proportionality, which ultimately rests upon the judgment of the Court.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Barnette, J., on 13 July 1999 in Superior Court, Harnett County, upon a jury verdict finding defendant guilty of first-degree murder. On 20 November 2000, the Supreme Court allowed defendant's motion to bypass the Court of Appeals as to his appeal of additional judgments. Heard in the Supreme Court 11 September 2001.

*Roy Cooper, Attorney General, by Gail E. Dawson and Teresa H. Pell, Special Deputy Attorneys General, for the State.*

*Sue A. Berry for defendant-appellant.*

STATE v. GAINEY

[355 N.C. 73 (2002)]

LAKE, Chief Justice.

Defendant was indicted on 13 April 1998 for one count of first-degree murder, one count of first-degree kidnapping, and one count of robbery with a dangerous weapon. The cases came on for a joint trial at the 28 June 1999 Criminal Session of Superior Court, Harnett County.

On 9 July 1999, the jury returned a verdict of guilty, and following a capital sentencing proceeding, recommended a sentence of death for the first-degree murder. Defendant was sentenced to death and further received a sentence of 117 to 150 months' imprisonment for robbery with a dangerous weapon. The trial court also sentenced defendant to a consecutive term of 46 to 65 months' imprisonment for second-degree kidnapping, finding that the first-degree kidnapping was subsumed in the first-degree murder conviction. For the reasons that follow, we conclude that defendant's trial and sentences, including specifically his capital sentencing proceeding, were free of prejudicial error and that defendant's sentence of death is not disproportionate.

At trial, the State presented forensic evidence and various statements by defendant which were inconsistent in some respects, but in all of which defendant readily admitted active participation in the murder. The State's evidence tended to show that on 3 March 1998, defendant and Larry McDougald lured Dwayne Winfield McNeill, the victim, to Norrington Church on the pretext that he would receive headlight covers to put on his new black Mustang GT. Defendant and McDougald then took McNeill at gunpoint to an uninhabited trailer located near defendant's home. Defendant there shot the victim several times. Defendant put the victim's body, wrapped in a comforter, in the trunk of the victim's car and drove it down Tim Currin Road and then off the road and back into some woods. As he dragged the victim's body further into the woods, he heard the victim say, "[H]elp me." Defendant went back to the car, got his gun, and fired two fatal shots. Defendant left the victim's body about one hundred yards into the woods, covered with pine straw and a tree branch. Defendant immediately disposed of the comforter and gun he had used in the murder, and he cleaned the car.

Around 5 March 1998, Carolyn Campbell, defendant's neighbor, went to a trailer she used for storage. She found bullet holes, pools of blood, and signs that someone had broken into the trailer. Campbell notified the Harnett County Sheriff's Department. They searched the

trailer and found six .22-caliber shell casings. The blood they found in the trailer matched the victim's.

The evidence further showed that on 10 March 1998, Dwight McNeill, the victim's father, received an anonymous phone call that the victim's car would be heading down Highway 87 in Spring Lake about 10:00 a.m. the next morning. Dwight McNeill informed the Harnett County Sheriff's Department, and officers waited the next morning for the Mustang. When the car passed, they immediately stopped the Mustang and found defendant driving the car. Defendant was wearing the victim's black leather jacket and had also taken possession of his wallet.

Defendant made several incriminating statements to investigators at the Harnett County Sheriff's Department. He later led investigators to the victim's body, and he showed them where he disposed of the gun and comforter. Investigators found the comforter but never located the gun. Blood found on the comforter matched the victim's.

On 13 March 1998, Marshall Gainey, defendant's father, contacted investigators and provided them with .22-caliber bullets that had not been fired. The bullets found in Campbell's trailer and those given to investigators by Marshall were all .22-caliber bullets manufactured by Federal.

An autopsy of the victim showed six gunshot wounds: to the forehead, the right eye, the left side of the upper lip, the left side of the chest, the right forearm, and the left upper back. The wounds to the right eye and the chest would have been fatal. The medical examiner also concluded that the bullet fragments removed from the victim's body were .22-caliber.

Defendant acknowledges the first six assignments of error presented in his brief as preservation issues, all of which we address as such later in this opinion. Further, we note that defendant has interspersed preservation issues throughout his brief, all of which are subsequently addressed herein, and that defendant has expressly abandoned a number of assignments of error. Accordingly, we will address defendant's remaining substantive assignments of error sequentially, without numerical reference.

[1] In his next assignment of error, defendant asserts that the trial court unconstitutionally denied his motion to suppress statements to investigators. Defendant contends that his statements were not

knowing, intelligent and voluntary and that they were made in response to impermissible statements by law enforcement officials that defendant would receive a benefit by giving the statements. Defendant did not testify, but he presented an affidavit in support of his motion. Defendant alleged that Lieutenant Billy Wade threatened and harassed him and told him that if he confessed, he could avoid the death penalty.

At the suppression hearing, the State presented the testimony of Special Agent Michael East of the State Bureau of Investigation (SBI) and Lieutenant Billy Wade of the Harnett County Sheriff's Department. Lieutenant Wade testified that he told defendant, "[I]f he wanted to help himself that he could help himself by cooperating." Special Agent East testified that he was unaware of any force used against defendant and that he did not know of any promises or representations being made to defendant. The trial court found as a fact that "[a]t no time prior to or during defendant's interviews did law enforcement officers threaten, strike or coerce him, or make any promises or offers of reward to him." The trial court also concluded, as a matter of law, that all of the statements were made freely and voluntarily.

Defendant concedes that findings of fact made by a trial judge following a *voir dire* on the voluntariness of a confession are conclusive upon this Court if they are supported by competent evidence. *State v. Rook*, 304 N.C. 201, 212, 283 S.E.2d 732, 740 (1981), *cert. denied*, 455 U.S. 1038, 72 L. Ed. 2d 155 (1982). Conclusions of law that are correct in light of the findings of fact are also binding on appeal. *State v. Howell*, 343 N.C. 229, 239, 470 S.E.2d 38, 43 (1996).

The voluntariness of a confession is determined by the "totality of the circumstances." *State v. Corley*, 310 N.C. 40, 47, 311 S.E.2d 540, 545 (1984). The proper determination is whether the confession at issue was the product of "improperly induced hope or fear." *Id.* at 48, 311 S.E.2d at 545. This Court has held that an improper inducement must promise relief from the criminal charge to which the confession relates, and not merely provide the defendant with a collateral advantage. *State v. Pruitt*, 286 N.C. 442, 458, 212 S.E.2d 92, 102 (1975).

Lieutenant Wade testified that he never made any promises to defendant concerning the disposition of his case, and Special Agent East also testified that he never heard Lieutenant Wade make any promises to defendant.

**STATE v. GAINEY**

[355 N.C. 73 (2002)]

Accordingly, the trial court's finding of fact that no promises or offer of reward were made to defendant is supported by competent evidence in the record. The trial court's conclusion of law that the statement was voluntary is supported by the finding of fact and the law. Therefore, the trial court properly denied defendant's motion to suppress his statements. This assignment of error is overruled.

**[2]** Defendant's next assignment of error involves the trial court's sustaining the State's objections to three questions posed during defendant's rehabilitation of prospective juror Barbara Jackson Wheeler. Defendant further asserts that the trial court improperly excused Wheeler over his objection.

When questioned by the prosecutor, Wheeler initially admitted she had "mixed emotions" and was not sure if she could sentence someone to death. She subsequently stated three times that she could never return a death verdict. The prosecutor challenged Wheeler for cause after she stated she could never return a death verdict. The trial court allowed defense counsel the opportunity to question Wheeler further. Defense counsel initially asked Wheeler three general questions as to whether she could follow the law of North Carolina, and counsel did not address the issue as to whether she could impose the death penalty. Finally, defense counsel asked Wheeler: "[U]nder any circumstances could you render a verdict that meant the death penalty?" She replied, "No, sir."

The standard this Court applies when determining when a prospective juror can be excluded for cause because of his or her views on capital punishment is whether the juror's views would " 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " *Wainwright v. Witt*, 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45, 65 L. Ed. 2d 581, 589 (1980)). Prospective jurors with reservations about imposing the death penalty must be able to " 'state clearly that they are willing to temporarily set aside their own beliefs in deference to the rule of law.' " *State v. Brogden*, 334 N.C. 39, 43, 430 S.E.2d 905, 907-08 (1993) (quoting *Lockhart v. McCree*, 476 U.S. 162, 176, 90 L. Ed. 2d 137, 149-50 (1986)). The granting of a challenge for cause where the juror's fitness is at issue is a matter within the discretion of the trial court and will not be disturbed absent a showing of abuse of discretion. *State v. Dickens*, 346 N.C. 26, 42, 484 S.E.2d 553, 561 (1997).

In the instant case, defendant is unable to show an abuse of discretion by the trial court in granting the State's challenge for cause of prospective juror Wheeler. Wheeler stated three times that she would not be able to impose the death penalty. Where a prospective juror's answers reveal that his views on the death penalty prevent him from following the law, the juror is properly excused for cause. *Wainwright*, 469 U.S. at 424, 83 L. Ed. 2d at 851-52. Regardless of Wheeler's statement that she could "follow the law" of North Carolina, it was reasonable for the trial court to find that she could not. Even if Wheeler's answers had been equivocal, this Court has held that "excusals for cause may properly include persons who equivocate or who state that although they believe generally in the death penalty, they indicate that they personally would be unable or would find it difficult to vote for the death penalty." *State v. Simpson*, 341 N.C. 316, 342-43, 462 S.E.2d 191, 206 (1995), *cert. denied*, 516 U.S. 1161, 134 L. Ed. 2d 194 (1996).

In the instant case, defendant cannot show an abuse of discretion on the part of the trial court in sustaining the State's objections to the three questions. Defendant stated that he was satisfied with each juror and did not exhaust his peremptory challenges; therefore, he cannot show prejudice from the trial court's ruling during rehabilitation of Wheeler. *See State v. Miller*, 339 N.C. 663, 678, 455 S.E.2d 137, 145, *cert. denied*, 516 U.S. 893, 133 L. Ed. 2d 169 (1995).

The trial court also properly sustained the State's objection to three general questions posed by defense counsel that did not address the pertinent issue: whether prospective juror Wheeler would be able to return a verdict of death under any circumstances. The trial court properly excused Wheeler when she unequivocally stated that she could not ever return a sentence of death. This assignment of error is overruled.

**[3]** In his next assignment of error, defendant argues that the trial court erred as a matter of law or, alternatively, abused its discretion, in overruling his objection to testimony by the victim's father, Dwight McNeill. McNeill testified that he received a phone call on 10 March 1998 from an anonymous caller. He testified, over objection, that the caller told him, "I think I know where your son's Mustang is at, I think I know who's got your car," and "[y]our car will be coming through Spring Lake at approximately 10:00." The caller also told him that the "car has dealer tags on it."

McNeill testified that, in response to the call, he "immediately called the sheriff's department." He· also testified that he and his brother and deputies went to Spring Lake the next morning and that when defendant passed by in McNeill's son's car, defendant was immediately apprehended. Defendant contends that this testimony was inadmissible and prejudicial hearsay.

The North Carolina Rules of Evidence define "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.G.S. § 8C-1, Rule 801(c) (1999). Out-of-court statements that are offered for purposes other than to prove the truth of the matter asserted are not considered hearsay. *State v. Call*, 349 N.C. 382, 409, 508 S.E.2d 496, 513 (1998). Specifically, statements are not hearsay if they are made to explain the subsequent conduct of the person to whom the statement was directed. *State v. Coffey*, 326 N.C. 268, 282, 389 S.E.2d 48, 56 (1990).

In *Call*, the witness testified as to a phone call he received from his mother telling him that there was a Mexican at her house and that she could not figure out what he wanted. *Call*, 349 N.C. at 409, 508 S.E.2d at 513. The witness testified that he immediately went to his mother's house after receiving the call. This Court determined that the trial court did not commit error in allowing this testimony into evidence for the sole purpose of showing what the witness did after receiving the telephone call.

In the present case, McNeill's testimony was not offered to prove the truth of the matter asserted, but rather to explain his subsequent actions. Without McNeill's statement, it would have been difficult for jurors to understand why deputies were staked out in Spring Lake the next morning, waiting for the victim's car. Accordingly, this testimony was proper nonhearsay evidence, and the trial court did not err in admitting it.

[4] Defendant also now asserts that McNeill's testimony regarding the anonymous call violated his constitutional right to confrontation. This claim is not properly before this Court, as defendant objected to this testimony at trial only on the basis of hearsay. Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal. *State v. Benson*, 323 N.C. 318, 322, 372 S.E.2d 517, 519 (1988).

Notwithstanding, "admission of nonhearsay 'raises no Confrontation Clause concerns.' " *United States v. Inadi*, 475 U.S. 387,

398 n.11, 89 L. Ed. 2d 390, 400 n.11 (1986) (quoting *Tennessee v. Street*, 471 U.S. 409, 414, 85 L. Ed. 2d 425, 431 (1985)), *quoted in State v. Jones*, 322 N.C. 406, 414, 368 S.E.2d 844, 849 (1988). "[A] witness under oath, [who is] subject to cross-examination, and whose demeanor can be observed by the trier of fact, is a reliable informant not only as to what he has seen, but also as to what he has heard." *Dutton v. Evans*, 400 U.S. 74, 88, 27 L. Ed. 2d 213, 226 (1970).

Accordingly, defendant's assertion that his rights pursuant to the Confrontation Clause were violated by admission of McNeill's statement as to what the anonymous caller said to him is without merit. This assignment of error is overruled.

[5] In his next assignment of error, defendant contends that the trial court erred in admitting the opinion testimony provided by SBI Special Agent Eugene Bishop. Agent Bishop testified that, in his opinion, the two bullets found in the right side of the victim's neck and in his chest were both .22-caliber bullets and had similar rifling characteristics. Defendant asserts that Agent Bishop's testimony as to this opinion was based on mere speculation or conjecture.

The admissibility of expert testimony is governed by Rule 702 of the North Carolina Rules of Evidence, which provides, "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." N.C.G.S. § 8C-1, Rule 702(a) (1999). Expert testimony is properly admissible when the witness, because of his expertise, is in a better position to have an opinion on the matter than is the trier of fact. *State v. Lawrence*, 352 N.C. 1, 17, 530 S.E.2d 807, 818 (2000), *cert. denied*, 531 U.S. 1083, 148 L. Ed. 2d 684 (2001); *State v. Wilkerson*, 295 N.C. 559, 568-69, 247 S.E.2d 905, 911 (1978). The trial court is given great latitude in determining the admissibility of expert testimony. *State v. Taylor*, 354 N.C. 28, 41, 550 S.E.2d 141, 150 (2001); *State v. Bullard*, 312 N.C. 129, 140, 322 S.E.2d 370, 376 (1984).

Agent Bishop was received without objection by the trial court as an expert in forensic firearms identification. Agent Bishop has been an agent with the SBI for twenty-six years, and he works in the firearms and toolmark section of the crime laboratory. He estimated that he had done in excess of 500 to 1,000 comparisons in matching bullets with the particular gun that fired them. Agent Bishop testified that the six fired cartridge cases found at the Campbell trailer and the

five unfired bullets supplied to the Harnett County Sheriff's Department by defendant's father were all .22-caliber bullets manufactured by Federal. He was also able to conclude that bullet fragments removed from the victim's body were also .22-caliber.

In light of his extensive knowledge of the subject matter, Agent Bishop certainly met the standard of Rule 702 of the North Carolina Rules of Evidence and was in a better position to provide an expert opinion on this subject than was the jury. Furthermore, Agent Bishop tested the bullets upon which he provided his opinion. This assignment of error is without merit and is overruled.

In his next two assignments of error, defendant challenges the sufficiency of the evidence presented in support of his robbery with a dangerous weapon and first-degree murder charges. This Court has held that in ruling on a motion to dismiss for insufficiency of the evidence, the trial court must consider the evidence in the light most favorable to the State and give the State every reasonable inference to be drawn therefrom. *State v. Lee*, 348 N.C. 474, 488, 501 S.E.2d 334, 343 (1998). The State is required to present substantial evidence for each element of the offense charged. *Id.* The trial court must consider all evidence presented that is favorable to the State. *State v. Jones*, 342 N.C. 523, 540, 467 S.E.2d 12, 23 (1996). If there is substantial evidence, either direct or circumstantial, that the defendant committed the offense charged, then a motion to dismiss is properly denied. *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988).

[6] Defendant first contends that the evidence was insufficient to prove that he committed the crime of robbery with a dangerous weapon. The necessary elements of this offense are: (1) an unlawful taking or an attempt to take the personal property from the person or presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of another is either endangered or threatened. *Call*, 349 N.C. at 417, 508 S.E.2d at 518; *see also* N.C.G.S. § 14-87 (1999).

In the case *sub judice*, the evidence viewed in the light most favorable to the State shows that defendant's confession provides adequate support for a finding that defendant took the victim's Mustang from him by threatening his life with a gun. Defendant admitted he called the victim on 3 March 1998 and told him to meet defendant at Norrington Church to pick up some headlight covers. Defendant and his friend McDougald waited for the victim to arrive,

with McDougald hiding in a car behind the church. According to defendant's statements, when the victim arrived and went to the trunk of the car to get the headlight covers, defendant and McDougald pulled a gun on him. They forced the victim back into his car with a gun to his head. Again, according to defendant's statements, McDougald shot the victim, and when defendant heard him gasping for breath and calling for help, defendant decided to put the victim out of his misery by shooting him twice in the head "so he wouldn't suffer like that." Defendant drove the victim's Mustang until he was apprehended on 11 March 1998. This evidence is sufficient to permit a rational jury to find that defendant robbed the victim with a dangerous weapon.

[7] Defendant further contends that he could not have committed the offense of robbery with a dangerous weapon because he took the victim's Mustang only after the victim was dead. This Court has held that "[w]hen, as here, the death and the taking are so connected as to form a continuous chain of events, a taking from the body of the dead victim is a taking 'from the person.' " *State v. Fields*, 315 N.C. 191, 202, 337 S.E.2d 518, 525 (1985). Where a continuous transaction occurs, the temporal order of the threat or the use of a dangerous weapon and the taking is immaterial. *State v. Green*, 321 N.C. 594, 605, 365 S.E.2d 587, 594, *cert. denied*, 488 U.S. 900, 102 L. Ed. 2d 235 (1988).

When viewing the evidence in the light most favorable to the State, the robbery of the victim and the murder were all part of a continuous chain of events. Defendant's confession shows that the victim was lured to the church so that defendant and McDougald could forcibly take his car. The evidence further shows that soon thereafter, the victim was killed. Defendant made use of the car in a manner to suggest that he owned the Mustang, he claimed it was his, and he had even put his belongings in the car, thus suggesting ownership. Furthermore, defendant drove the victim's car from the time of the murder until the day he was apprehended. This evidence is sufficient to permit a rational jury to find that the victim's murder and the act of stealing his car were so connected as to form a continuous chain of events. This assignment of error is overruled.

[8] Defendant next contends that the trial court erred in denying his motion to dismiss the first-degree kidnapping charge because there was insufficient evidence that the confinement of the victim was separate and apart from the killing. N.C.G.S. § 14-39(a) provides, in part, as follows:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

. . . .

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony.

N.C.G.S. § 14-39(a)(2) (1999). As used in our statute, "confine" suggests "some form of imprisonment within a given area, such as a room, a house or a vehicle." *State v. Fulcher*, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978).

Viewed in the light most favorable to the State, the evidence permitted a rational trier of fact to find that defendant lured the victim to Norrington Church under the pretense that he would be getting headlight covers for his car. When the victim arrived at the church, defendant put a gun to the victim's head and forced him to drive his own car to the Campbell trailer. The victim was then taken into the woods, and when he tried to get away, he was shot. The victim was alive when he was placed in the trunk of the car, as he was crying out for help before defendant delivered the fatal shots. We conclude that these facts provided ample evidence of confinement not inherent in the first-degree murder to support the charge of first-degree kidnapping. This assignment of error is overruled.

[9] In his next assignment of error, defendant contends that the trial court erred in denying his request for submission of second-degree murder as a possible verdict.

Murder in the first degree, the crime of which defendant was convicted, is the "intentional and unlawful killing of a human being with malice and with premeditation and deliberation." *State v. Fisher*, 318 N.C. 512, 517, 350 S.E.2d 334, 337 (1986). Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation. *State v. Brown*, 300 N.C. 731, 735, 268 S.E.2d 201, 204 (1980). A defendant is entitled to have a lesser-included offense submitted to the jury only when there is evidence to support the lesser-included offense. *Id.* at 735-36, 268 S.E.2d at 204.

STATE v. GAINEY

[355 N.C. 73 (2002)]

Here, evidence of the lesser-included offense of second-degree murder is lacking. Defendant presented no evidence, and the State's evidence tended to show that the victim was shot six times. After the victim had been wounded, defendant deliberately walked to the car, got the gun out, and shot the victim twice. Defendant shot the victim as he was helpless and crying out for help. He then dragged the victim's body into the woods and covered it with leaves and branches. Defendant immediately disposed of the murder weapon and the comforter in which the victim's body had been wrapped.

Defendant and McDougald talked about stealing the victim's car before 3 March 1998. Both before and after the murder, defendant expressed to others his plan to move to California and change his identity. The evidence fully supports a finding of premeditation and deliberation and, accordingly, an instruction for first-degree murder. There is no evidence supporting second-degree murder, and to suggest that defendant acted without premeditation and deliberation is to invite total disregard of the evidence.

[10] Defendant further contends that in order to find him guilty of first-degree murder, the jury had to pick and choose between the pieces of evidence it was going to believe. However, a "defendant is not entitled to an instruction on a lesser-included offense merely because the jury could possibly believe some of the State's evidence but not all of it." State v. Annadale, 329 N.C. 557, 568, 406 S.E.2d 837, 844 (1991). Defendant, in his brief to this Court, further speculates as to what "could have occurred" in the trailer that would tend to show that premeditation and deliberation were lacking. This Court has noted, however, that "mere speculation is not sufficient to negate evidence of premeditation and deliberation." State v. Gary, 348 N.C. 510, 524, 501 S.E.2d 57, 67 (1998). We conclude that the trial court correctly denied defendant's request to submit the offense of second-degree murder to the jury. This assignment of error is overruled.

[11] In his next assignment of error, defendant contends that his counsel made concessions of his guilt, without defendant's express permission, during opening and closing arguments.

In State v. Harbison, 315 N.C. 175, 180, 337 S.E.2d 504, 507-08 (1985), cert. denied, 476 U.S. 1123, 90 L. Ed. 2d 672 (1986), this Court held that a defendant has been denied effective assistance of counsel if his counsel admits his guilt to the jury without his consent. However, argument that

the defendant is innocent of all charges, but if he is found guilty of any of the charges it should be of a lesser crime because the evidence came closer to proving that crime than any of the greater crimes charged, is not an admission that the defendant is guilty of anything, and the rule of *Harbison* does not apply.

*State v. Harvell*, 334 N.C. 356, 361, 432 S.E.2d 125, 128 (1993); *see also State v. Greene*, 332 N.C. 565, 572, 422 S.E.2d 730, 733-34 (1992).

In the present case, defense counsel never conceded that defendant was guilty of any crime. Counsel merely noted defendant's involvement in the events surrounding the death of the victim, arguing that "if he's guilty of anything, he's guilty of accessory after the fact. He's guilty of possession of a stolen vehicle." This was hardly the equivalent of admitting that defendant was guilty of the crime of murder. Defendant has taken defense counsel's statements out of context to form the basis of his claim, and he fails to note the consistent theory of the defense that defendant was not guilty. This assignment of error is overruled.

**[12]** In his next assignment of error, defendant contends that the trial court erred in its instruction to the jury on the first-degree kidnapping charge. He also alleges that the instruction on "failure to release in a safe place" and "serious injury" were joined with "or," while the language of the indictment joined the phrases with "and." Defendant did not object to or make a constitutional claim for these errors at trial, but he now contends that they rise to the level of plain error.

Constitutional questions not raised and passed upon at trial will not be considered on appeal. *Benson*, 323 N.C. at 322, 372 S.E.2d at 519. "In criminal cases, a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C. R. App. P. 10(c)(4). In order to establish plain error, a defendant must establish that the trial court committed error and that absent this error, the jury would have probably reached a different result. *State v. Morganherring*, 350 N.C. 701, 722, 517 S.E.2d 622, 634 (1999), *cert. denied*, 529 U.S. 1024, 146 L. Ed. 2d 322 (2000). The instructional error must be " 'so fundamental that it denied the defendant a fair trial and quite probably tilted the scales against him.' " *State v.*

*Lucas*, 353 N.C. 568, 584, 548 S.E.2d 712, 723 (2001) (quoting *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993)).

Defendant's contention of plain error, based on the indictment being in the conjunctive and the jury instruction in the disjunctive, is without merit. There is no evidence in the record which in any way suggests or infers that any of the jurors erroneously considered the first-degree kidnapping charge in light of this minute discrepancy. The indictment merely informed defendant that the State planned to rely on two bases for proving defendant was guilty of first-degree kidnapping. In reality, only one of the two bases was necessary for the State to convict defendant of first-degree kidnapping. *See State v. Moore*, 315 N.C. 738, 743, 340 S.E.2d 401, 404 (1986) (holding that "[a]lthough the indictment may allege more than one purpose for the kidnapping, the State has to prove only one of the alleged purposes in order to sustain a conviction of kidnapping"). We conclude that the trial court's instruction in this regard was without error.

[13] Defendant further argues that the trial court erred in its instruction on the first-degree kidnapping charge because the instruction permitted the jury to convict on theories of the crime which were not charged in the bill of indictment.

Defendant was tried under N.C.G.S. § 14-39, which requires "confinement, restraint or removal" of the victim "from one place to another." In the trial court's instruction to the jury on first-degree kidnapping as a separate and distinct charge, the jurors were instructed on "restraint or removal," while the indictment asserted "confining." Defendant asserts that this was plain error. Because this issue was not raised before the trial court, it is reviewed under the plain error standard by this Court. *See State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983).

Defendant relies upon *State v. Tucker*, 317 N.C. 532, 346 S.E.2d 417 (1986). We find *Tucker* to be distinguishable from this case. In *Tucker*, the indictment alleged removal from one place to another, while the trial court instructed on restraint. *Id.* at 537, 346 S.E.2d at 420. This Court held that the instructional error might have "tilted the scales" and caused the jury to reach its guilty verdict "[i]n light of the highly conflicting evidence in the . . . kidnapping case on the unlawful removal and restraint issues." *Id.* at 540, 346 S.E.2d at 422. The evidence in the case *sub judice* is not highly conflicting. In fact, the evidence and defendant's own admission make it clear that the victim was confined, restrained, and removed during the course of

events, which ultimately resulted in the victim's death. According to defendant's own statement, the victim was forced at gunpoint into his own car and was later held in the trunk of the car.

The trial court's instruction included the terms "restricted his freedom of movement" and "restrained." Restriction, confinement or restraint all require restraint in some form. In *Fulcher*, 294 N.C. at 523, 243 S.E.2d at 351, this Court stated:

> As used in G.S. 14-39, the term "confine" connotes some form of imprisonment within a given area, such as a room, a house or a vehicle. The term "restrain," while broad enough to include a restriction upon freedom of movement by confinement, connotes also such a restriction, by force, threat or fraud, without a confinement. Thus, one who is physically seized and held, or whose hands or feet are bound, or who, by the threatened use of a deadly weapon, is restricted in his freedom of motion, is restrained within the meaning of this statute.

The evidence shows that defendant confined, restrained and removed the victim during the course of events on 3 March 1998. Given the strength of the evidence against defendant, including his own admissions, there is no reasonable basis for us to conclude that any different combination of the terms "confine," "restrain" or "remove" in the instruction would have altered the result. We cannot conclude that had the trial court instructed the jury that the defendant had to "confine" the victim to be guilty of first-degree kidnapping, this would have tilted the scales in favor of defendant. This assignment of error is overruled.

[14] In his next assignment of error, defendant contends the trial court erred in overruling his motion for a mistrial based on asserted improper contact between two jurors and an individual visiting the district attorney. During the lunch recess on 11 July 1999, two jurors hugged and spoke with a woman who was having lunch with the district attorney. This woman had been present that day during trial of the case.

Defendant made a motion for a mistrial based on an asserted appearance of inappropriate prejudicial contact between the two jurors and the district attorney's lunch companion. Pursuant to defendant's request, the trial court heard from the district attorney's lunch companion, Amy Elizabeth Blackman Johnson. Johnson told the trial court that she was a law student having lunch with a friend

of hers who worked in the district attorney's office. Johnson had attended high school with the two jurors and defendant. She explained to the court that her interaction with the jurors was very limited, and she merely told them that she was in law school and was married. After hearing from Johnson, the trial court denied defendant's motion for a mistrial.

When a trial court learns of alleged improper conduct with a juror, "the trial court's inquiry into the substance and possible prejudicial impact of the contact is a vital measure for ensuring the impartiality of the juror." *State v. Burke*, 343 N.C. 129, 149, 469 S.E.2d 901, 910-11, *cert. denied*, 519 U.S. 1013, 136 L. Ed. 2d 409 (1996). In *State v. Willis*, 332 N.C. 151, 173, 420 S.E.2d 158, 168 (1992), this Court held that "[i]n the event of some contact with a juror it is the duty of the trial judge to determine whether such contact resulted in substantial and irreparable prejudice to the defendant. It is within the discretion of the trial judge as to what inquiry to make."

Defense counsel told the trial court that he did not "believe anything inappropriate took place, but I think we need to put something on the record." The trial court then questioned Johnson to determine the substance of the conversation that she had with the two jurors.

Furthermore, defendant made no objection to the trial court's ruling on his motion for a mistrial. Immediately before the charge conference began, defendant renewed his motion for a mistrial, but he did not state any grounds upon which he based his motion. He did not at any time ask the trial court to question the two jurors, nor did he try to call additional witnesses to establish a case of inappropriate conduct. The trial court again denied the motion.

Defendant's concern was getting something on the record, and he stated numerous times that he did not think that any inappropriate conduct had taken place. The trial court did exactly what defendant requested by putting its inquiry into the matter on the record. Furthermore, when a defendant fails to object to the trial court's failure to conduct further inquiry into the report of inappropriate juror contact and does not allege plain error, he has waived his right to raise the issue on appeal. *State v. Jaynes*, 342 N.C. 249, 263, 464 S.E.2d 448, 457 (1995), *cert. denied*, 518 U.S. 1024, 135 L. Ed. 2d 1080 (1996).

Even if we wanted to address the substance of defendant's claim, he has failed to show an abuse of discretion by the trial court. In light

of the response by Johnson that her conversation was purely personal and unrelated to the case, and defense counsel's own concession that he did not believe that the contact was inappropriate, we conclude that the trial court acted appropriately within its discretion. This assignment of error is overruled.

**[15]** In his next assignment of error, defendant contends there was error in the submission of the (e)(5) aggravating circumstance, that the murder was committed while defendant was engaged in the commission of a kidnapping, *see* N.C.G.S. § 15A-2000(e)(5) (1999), because there was insufficient evidence to prove first-degree kidnapping beyond a reasonable doubt.

At trial, defendant made no objection to the submission of the (e)(5) aggravator based on the sufficiency of the evidence. In order to preserve an issue for appellate review, a party must have presented the trial court with a timely request, objection or motion, stating the specific grounds for the ruling sought if the specific grounds are not apparent. N.C. R. App. P. 10(b)(1); *State v. Eason*, 328 N.C. 409, 420, 402 S.E.2d 809, 814 (1991). Defendant has not properly preserved the issue of the sufficiency of the evidence to support the (e)(5) aggravator, and at most, defendant would be entitled to a plain error review of this claim. However, defendant has failed to specifically and distinctly assign plain error, as required by Rule 10(c)(4) of the North Carolina Rules of Appellate Procedure.

**[16]** Defendant further argues that the trial court improperly allowed the jury to double-count aggravating circumstances by submitting both (e)(5) and (e)(6), that the murder was committed for pecuniary gain, *see* N.C.G.S. § 15A-2000(e)(6). He argues the trial court allowed jurors to find both of these circumstances based on the same evidence.

Defendant objected to the trial court's submission of both the (e)(5) and (e)(6) aggravating circumstances. We conclude that this error was sufficiently preserved.

This Court has held that it is error to submit more than one aggravating circumstance unless each is supported by different evidence. *State v. Quesinberry*, 319 N.C. 228, 239, 354 S.E.2d 446, 452 (1987). However, when there is evidence supporting each aggravating circumstance, the trial court may submit both even though the evidence that supports each may overlap. *State v. Rouse*, 339 N.C. 59, 97, 451 S.E.2d 543, 564 (1994), *cert. denied*, 516 U.S. 832, 133 L. Ed. 2d 60

STATE v. GAINEY

[355 N.C. 73 (2002)]

(1995). "Aggravating circumstances are not considered redundant absent a complete overlap in the evidence supporting them." *State v. Moseley*, 338 N.C. 1, 54, 449 S.E.2d 412, 444 (1994), *cert. denied*, 514 U.S. 1091, 131 L. Ed. 2d 738 (1995). This Court has recognized that "in some cases the same evidence will support inferences from which the jury might find that more than one of the enumerated aggravating circumstances is present" and that this will usually occur where the defendant's motive, rather than a specific factual element, is at issue. *State v. Goodman*, 298 N.C. 1, 30, 257 S.E.2d 569, 588 (1979). It is well settled that it is not error to submit to the jury multiple aggravating circumstances, so long as the inquiry that is prompted by their submission is directed at distinct aspects of the defendant's character or the crime for which he is to be punished. *State v. Wilkinson*, 344 N.C. 198, 230, 474 S.E.2d 375, 392 (1996).

In the present case, the trial court instructed the jurors as to the (e)(5) and (e)(6) aggravating circumstances as follows:

> Under the evidence in this case there are two possible aggravating circumstances that you may consider, and the following are those aggravating circumstances. One, "Was this murder committed by the defendant, David Gainey, while he was engaged in the commission of the felony of kidnapping?" And two, "Was this murder committed for pecuniary gain?"
>
> . . . .
>
> So, if you find from the evidence beyond a reasonable doubt that when the defendant, David Gainey, or someone he was acting in concert with, killed Dwayne McNeill; that the defendant, or someone he was acting in concert with, unlawfully . . . confined Dwayne McNeill without Dwayne McNeill's consent, and that this confinement was for the purpose of facilitating the commission of the crime of murder, and that this confinement was a separate complete act, independent of and apart from the murder, if the State has proven all of this to you beyond a reasonable doubt, then you would find this aggravating circumstance . . . .
>
> . . . .
>
> Next, consider the second one. . . .
>
> If you find from the evidence beyond a reasonable doubt that when the defendant or someone he was acting in concert with killed Dwayne McNeill, that the defendant, or someone he was

acting in concert with, intended to rob Dwayne McNeill of his automobile and that the robbery was a reason for the killing, then you would find this aggravating circumstance.

Defendant argues that the instructions essentially "ask" the jury to decide whether defendant kidnapped the victim to kill him for pecuniary gain. Defendant does not make reference to any portion of the jury instructions upon which he bases this conclusion, nor does he articulate how each of the aggravating circumstances is supported by the same evidence. At no place in the instructions does the trial court mention that defendant kidnapped the victim for pecuniary gain.

Upon review of the evidence, we find ample independent evidence supporting both the (e)(5) aggravator, on the basis of kidnapping, and the (e)(6) aggravator, on the basis of the theft of the victim's car. The evidence shows clearly that the victim was lured to Norrington Church and was at several times restrained, confined and removed from place to place. The evidence further shows quite clearly that the underlying motivation for all of defendant's actions was the theft of the victim's car. After the victim was killed and his body left in the woods, defendant and his accomplice then took the victim's car, which defendant thereafter used as his own. Accordingly, we conclude there was ample independent evidence supporting the submission of each of these aggravating circumstances without depending on precisely the same evidence. This assignment of error is overruled.

[17] In his next assignment of error, defendant further contends that the trial court erred in submitting the (e)(6) aggravating circumstance to the jury. Initially, defendant contends there was insufficient evidence to support a finding beyond a reasonable doubt of robbery with a dangerous weapon, the underlying felony which elevates the "confinement, restraint or removal" to kidnapping for the submission of (e)(5). See N.C.G.S. § 14-39(a)(2). Defendant's assignment of error, however, is based solely on his objection to the submission of robbery with a dangerous weapon, the underlying felony for (e)(5), and to the submission of the (e)(6) pecuniary gain aggravating circumstance. At trial, defendant objected to the submission of robbery with a dangerous weapon in conjunction with the pecuniary gain aggravating circumstance, but made no objection as to the sufficiency of the evidence supporting robbery with a dangerous weapon.

Defendant has failed to properly preserve this issue because of his failure to raise it before the trial court. N.C. R. App. P. 10(b)(1); *Eason,* 328 N.C. at 420, 402 S.E.2d at 814. At most, defendant is enti-tled to a plain error review of this issue by this Court. However, defendant has failed to specifically and distinctly assign plain error as required by Rule 10(c)(4) of the North Carolina Rules of Appellate Procedure.

**[18]** Defendant made no request for the trial court to instruct the jury that it should not rely on the same evidence to support both aggravating circumstances. Defendant also failed to assign this omis-sion as error, but refers to it in his brief to this Court. The scope of review by this Court is limited to those assignments that were set out in the record on appeal. N.C. R. App. P. 10(a).

Defendant cites *State v. Jennings,* 333 N.C. 579, 430 S.E.2d 188, *cert. denied,* 510 U.S. 1028, 126 L. Ed. 2d 602 (1993), as supporting his contention that the trial court should have instructed the jury that it could not use the same evidence as the basis for a finding of two aggravating circumstances. In *Jennings,* the defendant asserted that the same evidence was necessary to prove both (e)(5), that the mur-der was committed during a sex offense, and (e)(9), that the mur-der was "especially heinous, atrocious, or cruel," N.C.G.S. § 15A-2000(e)(9). *Jennings,* 333 N.C. at 627, 430 S.E.2d at 213. The defendant in *Jennings* argued that the evidence of the sex offense was necessary to the jury's finding that the murder was especially heinous, atrocious, or cruel. *Id.* We disagreed, concluding there was substantial evidence of the (e)(9) aggravator apart from evidence the murder was committed during the sex offense. *Id.* The evidence showed that the victim had sustained multiple bruises and cuts to various parts of his body. *Id.* The hotel room had blood splattered on the ceiling, walls, floor and back of the mirror. *Id.* This Court deter-mined the evidence was sufficient to establish that the killing was especially heinous, atrocious, or cruel. *Id.* We addressed the trial court's error in failing to instruct jurors that they could not rely on the same evidence for both circumstances, but noted that the defend-ant did not object to the trial court's failure to give the instruction. *Id.* at 628, 430 S.E.2d at 214. We held that the failure to instruct did not rise to the level of plain error. *Id.*

As in *Jennings,* in the case *sub judice,* defendant failed to object to the trial court's failure to instruct. Furthermore, defendant did not request the instruction, did not assign error to the failure to give the instruction, and did not distinctly allege plain error in his claim

before this Court. Most significantly, the instruction defendant contends was necessary was not, because there is distinct and separate evidence supporting both aggravating circumstances.

This assignment of error is overruled.

[19] In his next assignment of error, defendant contends the trial court erred by denying his request to submit the (f)(1) mitigating circumstance, that "defendant has no significant history of prior criminal activity," N.C.G.S. § 15A-2000(f)(1).

This Court has held that the proper determination is " 'whether a rational jury could conclude that defendant had no *significant* history of prior criminal activity.' " *State v. Atkins*, 349 N.C. 62, 87-88, 505 S.E.2d 97, 113 (1998) (quoting *State v. Wilson*, 322 N.C. 117, 143, 367 S.E.2d 589, 604 (1988)), *cert. denied*, 526 U.S. 1147, 143 L. Ed. 2d 1036 (1999). A significant history of prior criminal activity, for purposes of (f)(1), is one that is likely to influence the jury's sentence recommendation. *Id.* at 88, 505 S.E.2d at 113. The (f)(1) mitigating circumstance is not supported by the mere absence of any substantial evidence concerning the defendant's prior criminal history. *State v. Laws*, 325 N.C. 81, 381 S.E.2d 609 (1989), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990); *State v. Hutchins*, 303 N.C. 321, 355-56, 279 S.E.2d 788, 809 (1981). It is the defendant's duty to provide evidence that tends to show the existence of a mitigating circumstance. *Hutchins*, 303 N.C. at 355-56, 279 S.E.2d at 809.

While some of defendant's witnesses indicated that, to the best of their knowledge, defendant had been in no real or "bad trouble" and had not been involved with illegal drugs or weapons, defendant offered no evidence of his criminal record. In *State v. Gibbs*, 335 N.C. 1, 55, 436 S.E.2d 321, 352 (1993), *cert. denied*, 512 U.S. 1246, 129 L. Ed. 2d 881 (1994), the defendant provided this Court with no evidence at all of any prior criminal conviction. We concluded in *Gibbs* that the defendant had provided no support for submission of the (f)(1) mitigator and that the trial court did not err in failing to submit it.

Defendant has the burden of establishing that he has no significant criminal history, and he has not done so in this case. Therefore, the trial court was not required to submit the (f)(1) mitigating circumstance. This assignment of error is overruled.

[20] In his next three assignments of error, defendant contends that the trial court erred in denying his requests to submit mitigating circumstances to the jury.

Initially, defendant asserts error in the trial court's denial of his request to submit the (f)(2) statutory mitigating circumstance, "[t]he capital felony was committed while the defendant was under the influence of mental or emotional disturbance," N.C.G.S. § 15A-2000(f)(2).

At the outset, we note that a trial court is not required to submit a mitigating circumstance unless there is substantial evidence to support it. *Rouse*, 339 N.C. at 100, 451 S.E.2d at 566. The defendant has the burden of proving the "substantial evidence" which tends to show that the mitigating circumstance exists. *Id.* Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *State v. Fletcher*, 348 N.C. 292, 323, 500 S.E.2d 668, 686 (1998), *cert. denied*, 525 U.S. 1180, 143 L. Ed. 2d 113 (1999).

In considering when the (f)(2) mitigating circumstance may be submitted, this Court has stated that the central question is a defendant's mental and emotional state at the time of the crime. *State v. Hooks*, 353 N.C. 629, 548 S.E.2d 501 (2001); *State v. Bonnett*, 348 N.C. 417, 502 S.E.2d 563 (1998), *cert. denied*, 525 U.S. 1124, 142 L. Ed. 2d 907 (1999). "The use of the word 'disturbance' in the (f)(2) circumstance 'shows the General Assembly intended something more . . . than mental impairment which is found in another mitigating circumstance [N.C.G.S. § 15A-2000(f)(6)].' " *State v. Geddie*, 345 N.C. 73, 102-03, 478 S.E.2d 146, 161 (1996) (quoting *State v. Spruill*, 320 N.C. 688, 696, 360 S.E.2d 667, 671 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 934 (1988)), *cert. denied*, 522 U.S. 825, 139 L. Ed. 2d 43 (1997), *quoted in Hooks*, 353 N.C. at 640, 548 S.E.2d at 509.

Dr. Jerry Noble, a clinical psychologist and defendant's expert witness, testified that defendant has a chronic mild depressive condition, a mixed personality disorder with paranoid and schizoid features, and a learning disorder. Dr. Noble further noted that defendant was easily subject to domination by others. Defendant also presented the testimony of a former teacher who testified that defendant had a learning disability.

Defendant now contends that this testimony regarding his low intelligence and mental illness was sufficient to link his mental and

emotional state to the time of the murder. Defendant concludes that a reasonable juror could have inferred from this evidence that he was under the influence of a mental or emotional disturbance at the time of the killing. We disagree.

Dr. Noble admitted that his findings were in doubt, as defendant was guarded in interviews and was hesitant to reveal information about himself. Dr. Noble also testified that defendant made a conscious decision not to participate in the evaluation, and Dr. Noble was unable to perform all of his standard tests on defendant. It is not relevant that defendant has a habit of deferring to others, as the evidence did not show that defendant acted under the domination of anyone. In fact, with each incriminating statement that defendant made to law enforcement officials, his own independent actions in the crime became more apparent. Dr. Noble diagnosed defendant as having learning disorders, but admitted that defendant's last IQ test showed his score to be 89 and that defendant had graduated from high school. Dr. Noble did not testify that it was his opinion that the murder was committed while defendant was under the influence of any mental or emotional disturbance. In fact, he testified that because of defendant's failure to cooperate in the evaluations, he did not have enough information to conclude that defendant was insane, nor was he able to provide an opinion as to defendant's state of mind on 3 March 1998. Dr. Noble opined that defendant's personality disorders existed on 3 March 1998, as he noted that such disorders generally originate in the early growing-up years, but this does not equate to evidence that the murder took place while defendant was under the influence of mental or emotional disturbance.

The evidence defendant submitted was not sufficient to warrant the trial court's submitting the (f)(2) mitigating circumstance. Defendant provided no evidence that he acted under the influence of a mental or emotional disturbance at the time of the murder. Dr. Noble even admitted that he had reservations about his opinions, because of defendant's unwillingness to participate in the evaluation.

[21] Next, defendant suggests the trial court erred in denying his request to submit the (f)(6) mitigating circumstance, that the capacity of defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired. See N.C.G.S. § 15A-2000(f)(6).

According to the testimony of Dr. Noble, defendant had suffered from a moderately severe to severe mixed personality disorder

since high school, with paranoid and schizoid features which tended to make him restless and impulsive. Dr. Noble also opined that defendant had a tendency to defer to the domination of others, caused from being raised in fear of his alcoholic father.

This does not provide sufficient evidence that defendant did not fully appreciate the criminality of his conduct or that he lacked the ability to conform his acts to the requirements of the law. Dr. Noble opined that on 3 March 1998, defendant knew what the act of murder was, and Dr. Noble was not aware of any psychological disorder that would have prevented defendant from understanding that stealing was wrong. Dr. Noble provided no evidence to suggest that defendant's capacity to appreciate the criminality of his conduct was impaired or that he was unable to conform his conduct to the requirements of law.

Dr. Noble's evaluation, as even he admits, is not reliable. Defendant would not tell him anything about 3 March 1998, and therefore Dr. Noble could make no assessments as to defendant's mental status on that date.

Contrary to defendant's contention, the evidence shows that he did fully understand that his acts were criminal. Defendant's statement to police officers about his conduct leading up to and during the murder demonstrated both purposefulness and deliberation. Defendant organized, designed and executed a scheme in which he lured the victim to the Norrington Church, where he and McDougald waited, and they shot the victim six times. Finally, defendant's actions after killing the victim demonstrate that he was aware that his acts were criminal. Defendant admitted that immediately after the killing he disposed of both the gun and the comforter used in the murder. After the murder, defendant also told friends that he was planning to run away. When he was apprehended, defendant even had a false identification in his possession. These actions show that defendant knew full well the nature of his actions and the criminality of his conduct.

[22] Finally, defendant argues that the trial court erred in denying his request for the (f)(7) mitigating circumstance, defendant's age at the time of the offense. See N.C.G.S. § 15A-2000(f)(7). Defendant relies upon the fact that he was twenty-five years old at the time of the murder. Defendant further asserts that the fact that he had an alcoholic father and a chaotic childhood along with his low-average intelligence and learning disability provide substantial

evidence that the (f)(7) circumstance should have been submitted. We disagree.

This Court has repeatedly held that chronological age is not the determinative factor in concluding this mitigating circumstance exists. *State v. Oliver*, 309 N.C. 326, 372, 307 S.E.2d 304, 333 (1983). The defendant's immaturity, youthfulness, or lack of emotional or intellectual development is also relevant. *State v. Bowie*, 340 N.C. 199, 203, 456 S.E.2d 771, 773, *cert. denied*, 516 U.S. 994, 133 L. Ed. 2d 435 (1995).

Defendant broadly asserts that he submitted "substantial evidence of his immaturity, youthfulness, and lack of emotional and intellectual development at the time of these crimes," yet cites no evidence in the record to support this bare assertion. Further, Dr. Noble testified that defendant had graduated from high school without repeating grades, that he had a stable work history, and that he was the father of five children. We conclude that defendant did not provide evidence sufficient to convince a reasonable juror that defendant's age at the time of the crime was a mitigating circumstance. The trial court did not err in refusing to submit this mitigating circumstance.

These assignments of error are overruled.

[23] In his next assignment of error, defendant contends that the trial court erred by failing to properly give peremptory instructions on the nonstatutory mitigating circumstances. Specifically, he argues the trial court erred in giving the instructions on the nonstatutory mitigating circumstances as a group and in not repeating the peremptory instruction for each individual nonstatutory circumstance. Defendant claims violations of numerous constitutional provisions and, in the alternative, plain error, but he fails to make an argument for either.

Defendant did not raise a constitutional claim before the trial court. Constitutional questions which are not raised and passed upon at trial will not be considered on appeal. *Benson*, 323 N.C. at 322, 372 S.E.2d at 519.

During the trial conference, the trial court went through each of the nonstatutory mitigating circumstances with both the State and defendant to determine whether defendant was entitled to peremptory instructions on the circumstances. Defendant made no objections during this discussion. The trial court instructed the jury as follows:

You should also consider the following circumstances arising from the evidence which you find to have mitigating value. And this would be—actually be two through seven. If one or more of you find by a preponderance of the evidence that any of these following circumstances exists and also are deemed by you to have mitigating value, you would so indicate by having your foreperson write yes in the space provided. If none of you find the circumstance to exist, or if—well, if none of you deem that these circumstances have mitigating value, then you would indicate by having your foreperson write no in the space provided.

*As to two through seven, I'm going to instruct you that those circumstances do exist.* You will still have to determine whether or not they have mitigating value. I'm going to take them up one at a time now.

(Emphasis added.)

Defendant now contends that these instructions were confusing and that no juror would have been able to discern their meaning. He further asserts that the problem was compounded by the erroneous "Issues and Recommendation as to Punishment" form.

After the trial court gave the jury instructions, the judge inquired as to whether defendant had any objections to the jury instructions given, and defendant stated that he had none. Furthermore, when specifically questioned about the "Issues and Recommendation as to Punishment" form, defendant expressed no objections.

Pursuant to N.C. R. App. P. 10(b)(2), a party is required to object to a jury charge, or any omission therefrom, if he feels aggrieved thereby, before the jury retires. *State v. McNeil,* 350 N.C. 657, 691, 518 S.E.2d 486, 507 (1999), *cert. denied,* 529 U.S. 1024, 146 L. Ed. 2d 321 (2000). At most, in the absence of an objection, defendant is entitled to a plain error review by this Court. *Benson,* 323 N.C. at 322, 372 S.E.2d at 519.

"[D]efendant is entitled to relief only if the instructions amounted to plain error, which is error 'so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.' " *State v. Parker,* 350 N.C. 411, 427, 516 S.E.2d 106, 118 (1999) (quoting *State v. Bagley,* 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied,* 485 U.S. 1036, 99 L. Ed. 2d 912 (1988)), *cert. denied,* 528 U.S. 1084, 145 L. Ed. 2d 681 (2000). It is indeed the rare case when a criminal con-

viction will be reversed on the basis of an improper instruction where the defendant made no objection. *Odom*, 307 N.C. at 661, 300 S.E.2d at 378.

Defendant was entitled to a peremptory instruction as to each of the nonstatutory mitigating circumstances, and as agreed upon during the trial conference, the jurors did receive a peremptory instruction on each. *See State v. White*, 349 N.C. 535, 568, 508 S.E.2d 253, 274 (1998) (holding that a defendant is entitled to a peremptory instruction when the mitigating circumstance is supported by uncontroverted evidence), *cert. denied*, 527 U.S. 1026, 144 L. Ed. 2d 779 (1999). The fact that the instruction was not repeated six times does not constitute a violation of defendant's constitutional or statutory rights.

This Court has discouraged needless repetition during instructions to the jury. *See, e.g., State v. Dawson*, 278 N.C. 351, 365, 180 S.E.2d 140, 149 (1971) (holding that the needless repetition of a charge in response to jury requests is undesirable and has been held erroneous on occasion). In *State v. Robbins*, 275 N.C. 537, 549-50, 169 S.E.2d 858, 866 (1969), the defendant challenged the trial court's instruction to the jury because the court did not define malice in its instruction on first-degree murder, even though it had been defined previously in the charge. This Court held that "[t]he trial judge is not required to repeat a definition each time a word or term is repeated in the charge when it has once been defined." *Id.*

In the case *sub judice*, the trial court instructed the jurors, "As to two through seven, I'm going to instruct you that those circumstances do exist." This instruction was the predicate instruction for each of the following nonstatutory mitigating circumstances, and defendant failed to find any error in this instruction that was given at trial. Even if the instruction could have been stated more appropriately, every poorly stated instruction does not result in prejudice which requires a new trial. *See State v. Harris*, 290 N.C. 681, 699, 228 S.E.2d 437, 447 (1976).

For the foregoing reasons, we conclude that any possible error resulting from the failure to repeat the jury instruction six times was harmless. This assignment of error is overruled.

[24] In his next assignment of error, defendant contends that the trial court erred by failing to properly set forth the nonstatutory mitigating circumstances on the "Issues and Recommendation as to

Punishment" form. Defendant asserts that this error denied him the right to a fair and reliable trial under the Eighth and Fourteenth Amendments to the United States Constitution. Defendant further argues that this error, in combination with the instructional error addressed above, entitles him to a new sentencing proceeding. We disagree.

Defendant failed to raise his constitutional claims before the trial court; therefore, we will not consider them now. *See Benson*, 323 N.C. at 322, 372 S.E.2d at 519. Defendant expressed to the trial court that he had no objections to the "Issues and Recommendation as to Punishment" form. A defendant is precluded from obtaining relief when the error was invited by his own conduct. *See* N.C.G.S. § 15A-1443(c) (1999); *State v. Payne*, 280 N.C. 170, 171, 185 S.E.2d 101, 102 (1971). Furthermore, defendant had a duty to object before the jury retired. N.C. R. App. P. 10(b)(2); *McNeil*, 350 N.C. at 691, 518 S.E.2d at 507.

**[25]** The "Issues and Recommendation as to Punishment" form at Issue Two states:

> Do you find from the evidence the existence of one or more of the following mitigating circumstances?
>
> . . . .
>
> Before you answer issue two, consider each of the following mitigating circumstances. In the space after each mitigating circumstance, write "yes" if one or more of you finds that mitigating circumstance by a preponderance of the evidence. Write "no" if none of you finds that mitigating circumstance.

The form then lists the eight possible mitigating circumstances. The two statutory mitigating circumstances, N.C.G.S. § 15A-2000(f)(8) (that defendant aided in the apprehension of another capital felon), (f)(9) (the catchall), are stated and each is followed by this language:

> ANSWER: _____ One or more of us finds this mitigating circumstance to exist.

The six nonstatutory mitigating circumstances are followed by:

> ANSWER: _____ This circumstance does exist and one or more of us finds it to have mitigating value.

The distinction made on the form between statutory and nonstatutory mitigating circumstances, in conjunction with the trial court's

oral instructions, clearly sets forth the peremptory instruction and the nonstatutory mitigating circumstances.

In *State v. Warren*, 348 N.C. 80, 115-17, 499 S.E.2d 431, 450-52, *cert. denied*, 525 U.S. 915, 142 L. Ed. 2d 216 (1998), the defendant claimed that an omission on the "Issues and Recommendation as to Punishment" form had violated his constitutional rights. After the (f)(2) statutory mitigating circumstance was the following: "ANSWER: ____ One or more of us finds this mitigating." *Id.* at 115, 499 S.E.2d at 451. The words "circumstance to exist" were inadvertently omitted from the form. *Id.* The defendant did not object to the form at trial, and this Court found that any error was harmless beyond a reasonable doubt. *Id.* This Court reasoned that the trial court's oral instructions and the language distinguishing the statutory and nonstatutory mitigating circumstances on the form were sufficient to show that there was no reasonable possibility that the omitted words impacted the jury's verdict. *Id.* at 117, 499 S.E.2d at 452.

As in *Warren*, the oral instructions given by the trial court in the case *sub judice*, in conjunction with the distinction between the statutory and nonstatutory mitigating circumstances on the form, were sufficient to provide proper instruction for the jurors. In the case at bar, the trial court did not improperly set forth the nonstatutory mitigating circumstances on the "Issues and Recommendation as to Punishment" form, and this assignment of error is overruled.

**[26]** In his next assignments of error, defendant contends the trial court erred in submitting to the jury an "Issues and Recommendation as to Punishment" form which described one of the possible punishments as "life imprisonment" rather than "life imprisonment without parole," and thereafter erred in its instructions on the meaning of "life imprisonment." On the form, the choice at Issue One and Issue Three was "life imprisonment," and the choices at Issue Four were "death" or "life imprisonment." During the trial court's instructions to the jury, the court stated: "If you unanimously recommend a sentence of life imprisonment, the court will impose a sentence of life imprisonment without parole."

Defendant asserts that these errors denied him his constitutional right to a fair and reliable sentencing proceeding under the Eighth and Fourteenth Amendments to the United States Constitution. Defendant concludes that he is, therefore, entitled to a new sentencing proceeding.

Defendant did not raise these constitutional claims before the trial court, and constitutional questions not raised before the trial court will not be considered on appeal. *See Benson,* 323 N.C. at 322, 372 S.E.2d at 519. When asked, defendant specifically told the trial court that he had no problems with the "Issues and Recommendation as to Punishment" form. Defendant made no objection after the jury instructions were given, and in a discussion between the trial court and counsel for both sides as to whether the trial court informed jurors that "life imprisonment means life without parole," defense counsel confirmed that the court had provided this instruction.

To the extent that defendant agreed with the trial court's manner of instruction, defendant has invited any alleged error, and he may not obtain relief from such error. *See* N.C.G.S. § 15A-1443(c); *Payne,* 280 N.C. at 171, 185 S.E.2d at 102. Pursuant to N.C. R. App. P. 10(b)(2), a party must object to the jury charge before the jury retires. *See McNeil,* 350 N.C. at 691, 518 S.E.2d at 507.

During the initial portion of the sentencing instructions, the trial court told the jury: "If you unanimously recommend a sentence of life imprisonment, the court will impose a sentence of life imprisonment without parole." During deliberations, the foreperson sent a note to the trial court requesting clarification as to the meaning of a "life sentence." The trial court expressed its intent to instruct the jurors that if they recommend a "life sentence," then such sentence means "life without parole." Defendant made no objection. The trial court thereafter instructed the jury that, "If the jury's recommendation is life imprisonment, then that means that I will sentence him to life without parole." During their closing arguments, both the State and defense counsel referred to "life without parole" several times.

The trial court's instructions were in accord with N.C.G.S. § 15A-2002, which requires the judge to instruct the jury "in words substantially equivalent to those of this section" that a sentence of "life imprisonment" means a sentence of "life without parole." The trial court's instructions, in conjunction with the trial court's response to the jury's question during deliberations, make clear and comport with the statutory requirement for the meaning of the term "life imprisonment." Furthermore, the plain meaning of the term "life imprisonment" suggests that the intent of this sentencing option is that defendant spend the rest of his life in prison. Also, the jurors heard the statement "life imprisonment without parole" numerous times.

Based on the foregoing, we conclude that the "Issues and Recommendation as to Punishment" form properly listed the two sentencing alternatives, and the trial court's instructions adequately defined the option of "life imprisonment." These assignments of error are overruled.

**[27]** In his next assignments of error, defendant contends that the jury's rejection of two nonstatutory mitigating circumstances violated his state and federal constitutional rights. Specifically, defendant asserts that his death sentence was imposed in an unconstitutionally arbitrary manner.

Defendants in capital sentencing proceedings have no constitutional right requiring jurors to find any nonstatutory mitigating circumstance. "Whether the jury finds a nonstatutory mitigating circumstance depends not only upon whether that circumstance is supported by the evidence, but also upon whether the jury determines that circumstance to have mitigating value." *Rouse*, 339 N.C. at 106, 451 S.E.2d at 570.

Even if the evidence is uncontradicted, the jury is still free to deliberate or to find that the circumstance does not have mitigating value. *See Lawrence*, 352 N.C. at 31, 530 S.E.2d at 826 (holding that jurors may find that a nonstatuory mitigating circumstance exists, but choose not to give that circumstance mitigating value); *State v. Carter*, 342 N.C. 312, 322, 464 S.E.2d 272, 279 (1995) (holding that even when peremptorily instructed, jurors have the right to reject the evidence if they lack faith in its credibility), *cert. denied*, 517 U.S. 1225, 134 L. Ed. 2d 957 (1996).

Initially, defendant refers to the nonstatutory mitigating circumstance, "Consider whether the defendant David Gainey has demonstrated love and affection to his mother, brother, maternal aunt and his five children." Defendant acknowledges that jurors may have rejected this circumstance, not because they did not believe it was supported by the evidence, but because they did not believe it had mitigating value. *See id.*

Next, defendant refers to the nonstatutory mitigating circumstance, "Consider whether the defendant David Gainey's social functioning and behavior are impaired by professionally diagnosed emotional or mood disorders."

Defendant asserts that during the sentencing phase, he introduced compelling evidence in mitigation showing the love that he has

demonstrated for his mother, aunt, brother and children. Defendant further argues that he introduced compelling evidence in mitigation, including the professional diagnosis of his emotional or mood disorders, which impair his social functioning.

The jury was free to reject these two nonstatutory mitigating circumstances on the basis that they had no mitigating value; therefore, defendant is not entitled to a new sentencing proceeding. For the foregoing reasons, we conclude that the jury's sentencing decision not to find the existence of these two nonstatutory mitigating circumstances was not unconstitutionally arbitrary. This assignment of error is overruled.

[28] In his final assignment of error, defendant argues that he was denied effective assistance of counsel because his counsel failed to properly preserve the record for appellate review. Specifically, he contends that his counsel failed to properly preserve errors regarding the admission of his statements, the jury instructions and the verdict sheets. Absent objection, all instructional and evidentiary issues raised before this Court must be tested under the plain error analysis as a result of defense counsel's failure to preserve these issues at the trial court. *See State v. Steen*, 352 N.C. 227, 256, 536 S.E.2d 1, 18 (2000), *cert. denied*, 531 U.S. 1167, 148 L. Ed. 2d 997 (2001). Defendant asserts that application of plain error review, a strenuous analysis, is prejudicial to him. Furthermore, he claims that his counsel's failure to make timely objections in these three areas constituted ineffective assistance of counsel.

To successfully assert an ineffective assistance of counsel claim, defendant must satisfy a two-prong test. *See Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984). First, he must show that counsel's performance fell below an objective standard of reasonableness. *See State v. Braswell*, 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985). Second, once defendant satisfies the first prong, he must show that the error committed was so serious that a reasonable probability exists that the trial result would have been different. *Id.* at 563, 324 S.E.2d at 248.

There is a presumption that trial counsel acted in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694. In analyzing the reasonableness under the performance prong, the material inquiry is whether the actions were reasonable considering the totality of the circumstances at the time of per-

formance. *Id.* Reviewing courts should avoid the temptation to second-guess the actions of trial counsel, and judicial review of counsel's performance must be highly deferential. *Id.* Under *Strickland*, a defendant must also show that he was prejudiced by his trial counsel's deficient performance to such a degree that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 80 L. Ed. 2d at 698.

Defendant's argument is broad and addresses no specific instances of error. Defendant has also failed to show how any of these alleged errors, if objected to by counsel, would have been resolved with a different outcome. Furthermore, contrary to N.C. R. App. P. 10(c)(4), defendant has failed to provide this Court with specific and distinct allegations of plain error.

Defendant has not demonstrated to this Court that his counsel was ineffective by failing to object to alleged errors with regard to the admission of his statements, the jury instructions and the verdict sheets. We thus conclude that these alleged errors are without merit and that defense counsel's failure to object to these issues at trial cannot be said to fall below an objective standard of reasonableness. Further, the evidence of defendant's guilt, including his confessions, is overwhelming. Accordingly, defense counsel's failure to object to the alleged errors did not have an impact on the trial that might have resulted in a different outcome. This assignment of error is overruled.

## PRESERVATION ISSUES

Defendant raises thirteen additional issues which he concedes have been previously decided contrary to his position by this Court: (1) the trial court erred by denying defendant's motion to dismiss the short-form indictment; (2) the trial court erred in denying defendant's motion to strike the death penalty from consideration because it violates both the federal and state Constitutions; (3) the trial court erred in denying defendant's motion to prevent the State from death-qualifying the jury; (4) the trial court erred in denying defendant's motion to examine prospective jurors regarding opinions on parole eligibility; (5) the trial court erred in its jury instructions on defendant's burden of proof as to mitigating circumstances; (6) the trial court erred in its jury instruction on Issue Three which did not require jurors to consider mitigating circumstances found in Issue Two; (7) the jury instruction on Issue Four did not require jurors to

consider mitigating circumstances found in Issue Two; (8) the trial court erred in giving a jury instruction which permitted jurors to determine whether each mitigating circumstance, if factually proven, had mitigating value; (9) the trial court erred in its failure to instruct the jury on the effect of a nonunanimous verdict; (10) the jury instructions for Issues One, Three and Four were unconstitutionally vague; (11) the trial court erred in instructing the jury that it had a "duty" to recommend a sentence of death if it found that the mitigating circumstances were insufficient to outweigh the aggravating circumstances; (12) the sentencing jury failed to consider in mitigation "any other circumstance arising from the evidence that one or more of you deems to have mitigating value"; and (13) the standards set by the Supreme Court of North Carolina for its proportionality review pursuant to N.C.G.S. § 15A-2000(d)(2) are vague and arbitrary.

Defendant raises these issues for the purpose of permitting this Court to reexamine its prior holdings and also for the purpose of preserving them for possible further judicial review of this case. We have considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. These assignments of error are overruled.

## PROPORTIONALITY REVIEW

[29] Having concluded that defendant's trial and capital sentencing proceeding were free of prejudicial error, we must now review the record and determine: (1) whether the evidence supports the aggravating circumstances found by the jury and upon which the sentencing court based its sentence of death; (2) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factor; and (3) whether the sentence is "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." N.C.G.S. § 15A-2000(d)(2). After thoroughly reviewing the record, transcript and briefs in the present case, we conclude that the record fully supports the aggravating circumstances found by the jury. Further, we find no indication that the sentence of death in this case was imposed under the influence of passion, prejudice or other arbitrary factor. We therefore turn to our final statutory duty of proportionality review.

In the present case, defendant was found guilty of murder under the theories of both premeditation and deliberation and felony mur-

der. Following a capital sentencing proceeding, the jury found the existence of two aggravating circumstances: (i) the murder was committed while defendant was engaged in the commission of a kidnapping, N.C.G.S. § 15A-2000(e)(5); and (ii) the murder was committed for pecuniary gain, N.C.G.S. § 15A-2000(e)(6).

The trial court submitted and the jury found one statutory mitigating circumstance: that defendant aided in the apprehension of another capital felon. N.C.G.S. § 15A-2000(f)(8). The trial court also submitted the "catchall" mitigating circumstance, but the jury did not find "[a]ny other circumstance arising from the evidence which the jury deems to have mitigating value." N.C.G.S. § 15A-2000(f)(9). Of the six nonstatutory mitigating circumstances submitted, the jury found four to exist.

One purpose of our proportionality review is to "eliminate the possibility that a sentence of death was imposed by the action of an aberrant jury." *State v. Lee*, 335 N.C. 244, 294, 439 S.E.2d 547, 573, *cert. denied*, 513 U.S. 891, 130 L. Ed. 2d 162 (1994). Another is to guard "against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). In conducting proportionality review, we compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994). This Court has found the death penalty disproportionate in seven cases: *Benson*, 323 N.C. 318, 372 S.E.2d 517; *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *and State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983).

We find the instant case distinguishable from each of these cases. The jury convicted defendant of first-degree murder under the theories of both premeditation and deliberation and felony murder. "The finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *State v. Artis*, 325 N.C. 278, 341, 384 S.E.2d 470, 506 (1989), *sentence vacated on other grounds*, 494 U.S.

1023, 108 L. Ed. 2d 604 (1990). In addition, the jury found both of the aggravating circumstances submitted: that the capital felony was committed for pecuniary gain and that it was committed while defendant was engaged in the felony of kidnapping. This Court has held that there are four aggravating circumstances, any of which, standing alone, is sufficient to support a death sentence. *See State v. Bacon,* 337 N.C. 66, 110 n.8, 446 S.E.2d 542, 566 n.8 (1994), *cert. denied,* 513 U.S. 1159, 130 L. Ed. 2d 1083 (1995). The (e)(5) circumstance, which the jury found here, is among those four.

It is also proper for this Court to "compare this case with the cases in which we have found the death penalty to be proportionate." *McCollum,* 334 N.C. at 244, 433 S.E.2d at 164. Although this Court reviews all of the cases in the pool when engaging in our duty of proportionality review, we have repeatedly stated that "we will not undertake to discuss or cite all of those cases each time we carry out that duty." *Id.* It suffices to say here that we conclude that the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the sentence of death disproportionate or to those in which juries have consistently returned recommendations of life imprisonment. Finally, this Court has noted that similarity of cases is not the last word on the subject of proportionality. *State v. Daniels,* 337 N.C. 243, 287, 446 S.E.2d 298, 325 (1994), *cert. denied,* 513 U.S. 1135, 130 L. Ed. 2d 895 (1995). Similarity "merely serves as an initial point of inquiry." *Id.* Whether the death penalty is disproportionate "ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *State v. Green,* 336 N.C. 142, 198, 443 S.E.2d 14, 47, *cert. denied,* 513 U.S. 1046, 130 L. Ed. 2d 547 (1994).

Based on the foregoing and the entire record in this case, we cannot conclude as a matter of law that the sentence of death was excessive or disproportionate. We hold that defendant received a fair trial and capital sentencing proceeding, free of prejudicial error.

NO ERROR.