**STATE v. ROLLINS**

[226 N.C. App. 129 (2013)]

STATE OF NORTH CAROLINA
v.
MICKEY VONRICE ROLLINS

No. COA12-552

Filed 19 March 2013

1. **Evidence—hearsay—prior testimony—confrontation rights not violated**

    The trial court did not err in a first-degree murder, attempted robbery with a dangerous weapon, and felony breaking and entering case by admitting into evidence a witness's prior testimony from defendant's *Alford* plea hearing under N.C.G.S. § 8C-1, Rule 804(b)(1), and defendant's confrontation rights were not violated.

2. **Evidence—steak knife—relevant—not unduly prejudicial**

    The trial court did not err in a first-degree murder, attempted robbery with a dangerous weapon, and felony breaking and entering case by admitting into evidence a steak knife. The knife was relevant under N.C.G.S. § 8C-1, Rule 401 and not unduly prejudicial under N.C.G.S. § 8C-1, Rule 403.

3. **Confessions and Incriminating Statements—motion to suppress—voluntary statements to spouse while incarcerated**

    The trial court did not err in a first-degree murder, attempted robbery with a dangerous weapon, and felony breaking and entering case by denying defendant's motion to suppress the statements he made to his wife while defendant was incarcerated at various correctional facilities due to an unrelated conviction. Defendant's confession to his wife was voluntarily made, and thus, admissible at trial.

Judge HUNTER, Jr., Robert N. concurring in result only.

Appeal by defendant from judgments entered 2 May 2011 by Judge Wayland J. Sermons, Jr. in Martin County Superior Court. Heard in the Court of Appeals 24 October 2012.

*Attorney General Roy Cooper, by Special Deputy Attorneys General Steven M. Arbogast and William P. Hart, Sr., for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate*

*Defender Barbara S. Blackman, for defendant-appellant.*

CALABRIA, Judge.

Mickey Vonrice Rollins ("defendant") appeals from judgments entered upon jury verdicts finding him guilty of first degree murder, attempted robbery with a dangerous weapon, and felony breaking and entering. We find no error.

## I. Factual and Procedural Background

On 11 June 2002, eighty-eight-year-old Harriet Brown Roberson Highsmith ("Highsmith") was discovered dead in her home in Robersonville, North Carolina. Highsmith's front door was found ajar, with her keys still in the lock. She had been stabbed twelve times in her neck, chest and stomach. The stab wounds had a blunt edge and a sharp edge, consistent with a knife. Although Highsmith's undergarments were pulled down to her thighs, there was no evidence of sexual assault.

Defendant was identified by law enforcement as a person of interest because he was in the area of Highsmith's home at the time of the murder. On 12 June 2003, defendant was voluntarily interviewed by the Robersonville Police Department ("RPD") in connection with the murder. During the interview, defendant admitted to being in Highsmith's neighborhood on the day of the murder. He stated that he had had an argument with his wife and spent the day at the home of his aunt, Mary Durham ("Durham"). Durham lived next door to Highsmith.

In March 2003, defendant confessed to his wife, Tolvi Rollins ("Tolvi"), that he had murdered Highsmith. He warned Tolvi not to share this information with anyone else. In October 2003, Tolvi contacted RPD Chief Darrell Knox and told him that she had information about Highsmith's murder. On 14 October 2003, Tolvi met with Agent Walter Brown ("Agent Brown") of the State Bureau of Investigation and provided him with details of Highsmith's murder which were consistent with the evidence found at the crime scene.

At the time Tolvi met with Agent Brown, defendant was incarcerated on unrelated charges. Tolvi agreed to wear a recording device and visit defendant in prison. Over the next two months, Tolvi visited defendant on five occasions. At each visit, defendant discussed details of the murder. According to the recordings and summaries provided by Tolvi, defendant entered Highsmith's home through an open door. When

Highsmith saw defendant, he decided to kill her because he would be "looking at 30 years" if Highsmith contacted law enforcement. Defendant told Tolvi that he stabbed Highsmith "about twelve or thirteen times" with two different knives. Defendant claimed he had attempted to make the murder look like a sexual assault in order to "throw the cops off."

On 2 February 2004, defendant was indicted for first degree murder, robbery with a dangerous weapon, felony breaking and entering, and first degree kidnapping. Agent Brown continued to investigate the murder and interviewed several inmates who were incarcerated with defendant. Based upon interviews with inmate Harris Ford ("Ford"), law enforcement searched a field near the Andrews Terrace projects ("Andrews Terrace") in Robersonville on 4 October 2006. The search uncovered a black-handled steak knife.

Prior to trial, defendant filed a motion to suppress the statements he made to Tolvi regarding Highsmith's murder while he was incarcerated. After a hearing, the trial court entered an order denying defendant's motion on 19 August 2005.

On 6 October 2006, defendant entered an *Alford* plea to the offense of first degree murder, reserving his right to appeal the denial of his motion to suppress. Durham testified at defendant's plea hearing in order to establish a factual basis for his plea. She testified that defendant had approached her house shortly after 4:00 p.m. on the day of the murder. Durham and defendant talked on her porch for a few minutes, and then defendant left to make a phone call. Defendant walked in the direction of Highsmith's house. A short time later, defendant returned to Durham's porch and asked for a glass of water. Defendant again left Durham's house, and "five or ten minutes" later, Durham saw him standing by a fence at the back of Highsmith's property.

Defendant appealed the denial of his motion to suppress his statements to Tolvi to this Court. On 8 March 2008, the Court issued an opinion reversing the trial court's denial of defendant's motion and granting defendant a new trial. *State v. Rollins*, 189 N.C. App. 248, 658 S.E.2d 43 (2008)("*Rollins I*"). The *Rollins I* Court held that defendant's statements to Tolvi were protected by the marital privilege. *Id.* at 260, 658 S.E.2d at 50-51.

The State petitioned our Supreme Court for discretionary review, which was granted on 26 August 2008. On 1 May 2009, the Court issued an opinion reversing the opinion of this Court. *State v. Rollins*, 363 N.C. 232, 675 S.E.2d 334 (2009)("*Rollins II*"). The *Rollins II* Court held that

defendant's statements to Tolvi were not protected by the marital privilege because defendant had no reasonable expectation of privacy in the conversations he had with his wife while in prison. *Id.* at 241, 675 S.E.2d at 340. The Court remanded the case to this Court for consideration of defendant's remaining assignments of error which had not been previously addressed in *Rollins I. Id.*

On remand, this Court issued an opinion which again granted defendant a new trial. *State v. Rollins*, 200 N.C. App. 105, 682 S.E.2d 411 (2009) (*"Rollins III"*). The *Rollins III* Court held that the trial court failed to make necessary findings on the voluntariness of defendant's statements to Tolvi when it denied his motion to suppress. *Id.* at 112, 682 S.E.2d at 416. Defendant's case was remanded for a new suppression hearing. *Id.*

After the new suppression hearing, the trial court entered an order which again denied defendant's motion to suppress his statements to Tolvi on 19 July 2010. Defendant's case then proceeded to trial. Beginning 25 April 2011, defendant was tried by a jury in Martin County Superior Court.

At trial, the court admitted, over defendant's objection, testimony by Agent Brown that he had interviewed defendant's fellow inmates during the course of his investigation. Agent Brown specifically noted that he had met several times with Ford, and that as a result of those conversations, he conducted a search in a field near Andrews Terrace and discovered a black-handled steak knife. The trial court overruled defendant's Confrontation Clause and relevance objections to Agent Brown's testimony and the knife.

Durham was called to testify at trial. However, prior to her testimony, the parties conducted a *voir dire* examination during which Durham stated that she could not currently identify defendant, that she did not remember knowing Highsmith, that she did not remember the events of the day of the murder, and that she could not remember previously testifying. As a result, the trial court admitted, over defendant's objection, a transcript of Durham's testimony as a recorded recollection under North Carolina Rule of Evidence 803(5), as former testimony of an unavailable witness under Rule 804(b)(1), and under the residual hearsay exception, Rule 803(24).

At the conclusion of the evidence, the trial court dismissed the kidnapping charge. On 2 May 2011, the jury returned verdicts finding defendant guilty of first degree murder, based upon the theories of both felony murder and premeditation and deliberation, attempted robbery

with a dangerous weapon, and felony breaking or entering. For the first degree murder conviction, the trial court sentenced defendant to life imprisonment without the possibility of parole. For the attempted robbery conviction, defendant was sentenced to a minimum of 103 months to a maximum of 133 months. Finally, for the felony breaking or entering conviction, defendant was sentenced to a minimum of 10 months to a maximum of 12 months. These sentences were to be served consecutively in the North Carolina Department of Correction. Defendant appeals.

## II.  Durham's Prior Testimony

**[1]**  Defendant argues that the trial court erred when it admitted into evidence Durham's prior testimony from his *Alford* plea hearing in 2006. Defendant contends that Durham's testimony was inadmissible hearsay and violated his rights under the Confrontation Clause. We disagree.

### A.  Hearsay

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2011). While hearsay is typically inadmissible as evidence under N.C. Gen. Stat. § 8C-1, Rule 802 (2011), the Rules of Evidence provide a number of exceptions to this general rule. *See* N.C. Gen. Stat. § 8C-1, Rules 803-04 (2011). "When preserved by an objection, a trial court's decision with regard to the admission of evidence alleged to be hearsay is reviewed *de novo*." *State v. Johnson*, ___ N.C. App. ___, ___, 706 S.E.2d 790, 797 (2011).

In the instant case, the trial court concluded that Durham's former testimony was admissible under multiple exceptions to the hearsay rule, including the exception for the former testimony of an unavailable witness under N.C. Gen. Stat. § 8C-1, Rule 804 (b)(1) (2011). Under this exception to the hearsay rule,

> [t]estimony taken at a prior proceeding is admissible when (1) the witness is unavailable;[1] (2) the proceeding at which the former testimony was given was a former trial of the same cause, or a preliminary stage of the same cause, or the trial of another cause involving the issue and

---

1. Defendant does not challenge the trial court's conclusion that Durham was an unavailable witness.

> subject matter at which the testimony is directed; and (3)
> the current defendant was present at the former proceed-
> ing and was represented by counsel.

*State v. Chandler*, 324 N.C. 172, 181, 376 S.E.2d 728, 734 (1989).

At trial, the trial court conducted a *voir dire* examination of Durham and concluded that her prior testimony was admissible because it took place during

> a hearing in the same case. ... [I]t was a hearing upon a
> plea pursuant to State V. Alford in which the defendant
> did not admit his guilt and also after the defendant's mo-
> tion to suppress his statements made during visits with his
> wife at a department of correction facility were denied by
> the trial court and the defendant gave notice of appeal to
> that denial reserving the right to take that to the appellate
> courts and entered the Alford guilty plea pursuant to that
> procedure. The Court is going to find that the issue of the
> motion to suppress and the defendant's guilt or innocence
> was still pending and is a similar motive, and the lawyers
> for the defendant possessed similar motive to develop the
> testimony by direct cross or redirect-examination.

Defendant contends that the trial court's conclusion was erroneous because he had no motive to cross-examine Durham during his *Alford* plea hearing. He argues that "[i]t is a matter of common sense that a defendant does not ordinarily participate in plea negotiations, waive a jury trial, tender a guilty plea, and then take affirmative steps at the plea hearing to undermine acceptance of a plea hearing affording him substantial benefits." Defendant does not cite any cases to support his "common sense" assertion.

As the trial court correctly noted in its oral ruling, defendant, by entering an *Alford* plea in the earlier proceeding, did not admit his guilt. *See State v. Chery*, 203 N.C. App. 310, 314, 691 S.E.2d 40, 44 (2010)("A defendant enters into an *Alford* plea when he proclaims he is innocent, but intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." (internal quotations and citation omitted)). Moreover, defendant specifically reserved the right to appeal his guilty plea based upon the denial of his motion to suppress. Thus, defendant was aware that further proceedings regarding his guilt for Highsmith's murder were possible, and he had a motive to cross-examine Durham for purposes of these future

proceedings. *See State v. Ramirez*, 156 N.C. App. 249, 257-58, 576 S.E.2d 714, 720-21 (2003)(Testimony of the defendant's former girlfriend given at his bond hearing was properly admitted against him at trial because the defendant had the same motive to cross-examine the witness at the bond hearing as he would have at his future trial, "to expand upon and possibly discredit [her] testimony."). Although defendant now claims that he had no motive to cross-examine the State's witnesses at the plea hearing, his claim cannot be reconciled with the fact that defendant did, in actuality, cross-examine another one of the State's witnesses who testified during the hearing. Ultimately, we agree with the trial court's conclusion that, under the specific circumstances of this case, defendant possessed a similar motive to cross-examine Durham during his *Alford* plea hearing as he would have had at trial. Thus, the trial court properly determined that Durham's testimony was admissible under N.C. Gen. Stat. § 8C-1, Rule 804(b)(1). Since we have determined that Durham's testimony was admissible under this exception, we do not address defendant's arguments regarding the remaining hearsay exceptions which were found to be applicable by the trial court.

### B. Confrontation Clause

Defendant also argues that the admission of Durham's former testimony violated his rights under the Sixth Amendment's Confrontation Clause. However, our Supreme Court has stated that "[t]he Confrontation Clause of the Sixth Amendment bars admission of testimonial evidence unless the declarant is unavailable to testify *and the accused has had a prior opportunity to cross-examine the declarant." State v. Locklear*, 363 N.C. 438, 452, 681 S.E.2d 293, 304 (2009)(emphasis added). In the instant case, defendant definitively had a prior opportunity to cross-examine Durham during his 2006 *Alford* plea hearing, and, as previously noted, had a similar motive to cross-examine Durham as he would have had at trial. Since defendant was afforded a prior opportunity to cross-examine Durham, under *Locklear*, defendant's confrontation rights were not violated. *Id.* This argument is overruled.

### III. Admission of Knife

[2] Defendant argues that the trial court erred by admitting into evidence a black-handled steak knife that was discovered in a field near Andrews Terrace in 2006. We disagree.

### A. Confrontation Clause

Defendant first argues that the trial court erred by permitting Agent Brown to testify regarding his discovery of the knife after he had

interviewed some of defendant's fellow inmates. Defendant contends that his constitutional right to confront witnesses against him was violated by Agent Brown's testimony.

As previously noted, the Confrontation Clause bars the admission of testimonial evidence unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Locklear*, 363 N.C. at 452, 681 S.E.2d at 304. However, "[t]he Sixth Amendment's Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.' " *State v. Mason*, ___ N.C. App. ___, ___, 730 S.E.2d 795, 801 (2012)(quoting *Crawford v. Washington*, 541 U.S. 36, 59-60 n.9, 158 L. Ed. 2d 177, 197-98 n.9 (2004)). "This Court reviews *de novo* whether the right to confrontation was violated." *State v. Lowery*, ___ N.C. App. ___, ___, 723 S.E.2d 358, 362 (2012).

In the instant case, the State elicited the following testimony from Agent Brown:

> Q. Now, Agent Brown, during the course of this investigation, which was somewhat lengthy, did you have an occasion to interview other inmates in the department of correction?
>
> A. Yes, I did.
>
> Q. And during the course of your investigation did you determine whether these individuals at some point or another had been housed in the same facility as [defendant]?
>
> A. Yes, they were.
>
> Q. All right. And do you have the names of some of the individuals that you interviewed?
>
> A. Yes, I do, Denzel Williams, James Grimes, Dale Shepherd, Curt – Mr. Hyman. I can't pronounce his first name and Harris Ford.

The State then focused its inquiry entirely on Agent Brown's interactions with Ford:

> Q. Now as to the last person you named, Harris Ford, do you recall how many times you interviewed him?

A. I spoke to him on three occasions, but I spoke to him twice.

Q. Okay. You said you spoke to him on three occasions, but how many times did you interview him?

A. Twice.

Q. All right. And the third time that you spoke to him, do you recall where that was?

A. That was at Central Prison in Raleigh, North Carolina.

Q. And was anyone else with you on that visit?

A. Yes. The District Attorney, Seth Edwards, and his Assistant District Attorney Tom Anglim.

Q. And do you recall the date of that third encounter with Mr. Ford?

A. I believe it was October 2, 2000 and — give me one second — 2006.

Q. Okay. So that was over four years after Mrs. Highsmith's murder.

A. That's correct.

Q. And as a result of those interviews and conversations, what did you do next in your investigation?

Agent Brown next testified that he "organized a search of some areas that we identified by arranging other local law enforcement . . . to search some areas near the . . . Andrews Terrace projects in Robersonville, North Carolina" on 4 October 2006. Agent Brown then began to describe the parameters of the search near Andrews Terrace. When the State asked Agent Brown what the search had uncovered, defendant objected and the trial court sent the jury out of the courtroom so that the parties could conduct a *voir dire* examination.

Agent Brown testified on *voir dire* that, based upon a conversation between Ford, Edwards and Anglim, outside of Agent Brown's presence, he led a search of a field near the Andrews Terrace projects. Ford's conversation with Edwards and Anglim was the sole reason that Agent Brown searched that area and discovered the knife.

Defendant argues that the State improperly introduced Ford's statement about the location of the knife indirectly through the testimony of Agent Brown. Defendant contends that "the 'inescapable inference' from Agent Brown's testimony was that inmates Williams, Grimes, Shepherd, Hyman, and Ford told him about conversations they had with Mr. Rollins in the Department of Correction in which Mr. Rollins said that he hid a knife under shrubbery near the Andrews Terrace projects."

Initially, we note that defendant's argument exaggerates the scope of the information Agent Brown testified to relying upon. While Agent Brown acknowledged during his testimony that he had spoken to several of defendant's fellow inmates, he only discussed, in detail, his meetings with Ford. It was only after answering several questions about his meetings with Ford that Agent Brown testified that he organized his search. Thus, it is clear from the context of Agent Brown's examination that Ford was the source of his information. Indeed, when arguing that Agent Brown's testimony should be excluded due to its violation of defendant's confrontation rights, defense counsel focused exclusively on Ford:

> Well, I guess, with regards to my argument, Your Honor, I would submit to the Court that it's – it's kind of clear that the testimony is, "I had this conversation with Harris Ford, an inmate, and from that conversation" — even though the officer is not testifying that that conversation led him to the knife, the way he testified it's clear to the jury that he had a conversation with Harris Ford. Following that conversation, "I went to this vacant lot and found this knife based upon what Harris Ford said to me."
>
> . . .
>
> What I am saying is that the confrontation clause, in my opinion and for purposes of my argument, does apply as it relates to Harris Ford giving the police information.

Since defendant's argument at trial was only that the indirect introduction of Ford's interviews with Agent Brown, Edwards, and Anglim violated defendant's confrontation rights, we will limit our focus to the introduction of the information Ford provided to the State regarding the location of the knife recovered from Andrews Terrace.

Our Supreme Court has held that "[o]ut-of-court statements that are offered for purposes other than to prove the truth of the matter asserted are not considered hearsay. Specifically, statements are not hearsay if

they are made to explain the subsequent conduct of the person to whom the statement was directed." *State v. Gainey*, 355 N.C. 73, 87, 558 S.E.2d 463, 473 (2002)(citations omitted). Based upon this principle, this Court has upheld a law enforcement officer's testimony concerning witness statements that subsequently explained his actions during an investigation. *See State v. Alexander*, 177 N.C. App. 281, 283-84, 628 S.E.2d 434, 435-36 (2006).

In *Alexander*, a law enforcement officer was told by another detective that an informant had information regarding an armed robbery he was investigating. *Id.* at 283, 628 S.E.2d at 435. According to the officer's testimony, the informant gave him a name, "Vaughntray," which the officer connected to the defendant. *Id.* The officer then showed a photo array to the victim, who identified the defendant "almost immediately." *Id.* This Court held that the officer's testimony

> regarding his interaction with the detective and [the informant] was nonhearsay and proper to explain his subsequent actions. It was not admitted to prove that the information [the informant] offered was "important" or that someone named "Vaughntray" committed the crime. Rather, the testimony explained how Officer Dozier had received information leading him to form a reasonable suspicion that defendant was involved in the robbery, which in turn justified his inclusion of defendant's photograph in the lineup.

*Id.* at 284, 628 S.E.2d at 436.

In the instant case, Agent Brown's testimony regarding the information he learned from Ford was used to explain to the jury the reason Agent Brown took the subsequent action of searching a particular field near Andrews Terrace almost four years after Highsmith's murder. While it is true, as defendant suggests, that Agent Brown's testimony creates a strong inference that Ford learned the location of the knife from defendant, that inference would only be problematic if Ford's indirect statement had been admitted for its truth. Statements by non-testifying witnesses which may implicate the defendant in a crime are permissible when they are only used to explain the subsequent actions of the testifying witness. *See, e.g., id.; State v. Leyva*, 181 N.C. App. 491, 499-500, 640 S.E.2d 394, 398-99 (2007)(Testimony that fellow detective told witness that "[defendant] and the informant were going to meet at Salsa's Restaurant and discuss at least a quarter kilo deal of cocaine" was admissible to "explain the officers' presence at Salsa's Restaurant . . . .");

*State v. Wiggins*, 185 N.C. App. 376, 378-84, 648 S.E.2d 865, 868-71 (2007) (Testimony regarding an informant's repeated statements to the witness that the defendants would be selling drugs from a Quality Inn was admissible to "explain how the investigation of Defendants unfolded, why Defendants were under surveillance at the Quality Inn, and why [the witness] followed the vehicle to the Quality Inn."); and *State v. Batchelor*, 202 N.C. App. 733, 735-37, 690 S.E.2d 53, 55-56 (2010)(Testimony that an informant told the witness that he recognized the defendant as a drug dealer was admissible "to explain [the witness's] presence at Colony car wash rather than to prove that defendant was a known drug dealer."). Since Agent Brown's testimony regarding his conversations with Ford was admitted for the proper purpose of explaining his decision to conduct a search near Andrews Terrace, the testimony was not hearsay. *See Gainey*, 355 N.C. at 87, 558 S.E.2d at 473. Accordingly, defendant's confrontation rights were not violated because "admission of nonhearsay raises no Confrontation Clause concerns." *Id.* (internal quotations and citations omitted). This argument is overruled.

### B. Relevance

Defendant next argues that the trial court erred by admitting the knife into evidence because it was not relevant under Rule 401. "The admissibility of evidence is governed by a threshold inquiry into its relevance. In order to be relevant, the evidence must have a logical tendency to prove any fact that is of consequence in the case being litigated." *State v. Griffin*, 136 N.C. App. 531, 550, 525 S.E.2d 793, 806 (2000)(internal quotations and citation omitted).

> Although the trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal. Because the trial court is better situated to evaluate whether a particular piece of evidence tends to make the existence of a fact of consequence more or less probable, the appropriate standard of review for a trial court's ruling on relevancy pursuant to Rule 401 is not as deferential as the 'abuse of discretion' standard which applies to rulings made pursuant to Rule 403.

*Dunn v. Custer*, 162 N.C. App. 259, 266, 591 S.E.2d 11, 17 (2004)(internal quotations and citation omitted).

"As a general rule weapons may be admitted in evidence where there is evidence tending to show that they were used in the commission of a crime." *State v. Bruton*, 344 N.C. 381, 386, 474 S.E.2d 336, 340 (1996) (internal quotations and citation omitted). At trial, the State presented evidence from Dr. M.G.F. Gilliland ("Dr. Gilliland"), a pathologist. Dr. Gilliland testified that Highsmith died of multiple stab wounds which were likely to have been inflicted by a knife which was at least two-and-three-quarter inches long and which did not have a serrated edge.

Defendant contends that the knife which was discovered near Andrews Terrace was improperly admitted into evidence because it could not have been the murder weapon. In support of its argument, defendant notes that (1) the knife was found more than four years after Highsmith's murder, in a public place, and it could not be determined when it was abandoned; (2) the knife contained neither fingerprints nor blood evidence; (3) no testifying witness identified the knife as the potential murder weapon; and (4) the knife which was discovered had small serrations, which did not match Dr. Gilliland's testimony about the type of knife which inflicted Highsmith's wounds.

The trial court conducted a *voir dire* hearing in order to determine if the knife was relevant. At the conclusion of the hearing, the court stated:

> All right. The Court is going to find, pursuant to rule 401, that because of all the factors that have been argued for relevancy, chief among them being the defendant's statement that the knife was a black-handled knife to his wife that has already been admitted into evidence, that the defendant at a time very recently after the death of the victim was in close proximity to the area where the knife was found, and that the knife matches the description of what type of knife that would cause the wounds that the consulting pathologist testified were on Mrs. Highsmith's body, that pursuant to rule 401 this evidence has a tendency to make the existence of any fact that is of consequence to the determination in this trial more probable or less probable than it would be without the evidence, and that is the test, so your objection is overruled, and note the defendant's objection and exception for the Record.

"The trial court's findings of fact following a *voir dire* hearing are binding on this Court when supported by competent evidence." *State v. Lane*, 334 N.C. 148, 154, 431 S.E.2d 7, 10 (1993).

In the instant case, the trial court's findings are supported by competent evidence. Defendant's wife had previously testified that defendant told her that he used a black-handled knife when he stabbed Highsmith. Agent Brown testified on *voir dire* that another officer had seen defendant approximately 150 yards from the field where the knife was discovered on the day of the murder.

Finally, and most importantly, the trial court physically examined the knife on the record and determined it was consistent with Dr. Gilliland's prior testimony. The following exchange occurred between the trial court and the parties immediately prior to the court's ruling:

THE COURT: Mr. Brown, can I see the knife again.

A. Yes, sir.

THE COURT: If you would, lay it up here in front of me on the bag. All right. You can sit down. Am I not further recalling that Dr. Gilliland indicated the wounds were of a nature that one side of the blade would have been blunt or flat and the other side of the blade would have been sharp, and it would not have been serrated?

[The State]: I think that's what she said.

THE COURT: Isn't that the testimony in the case?

[The State]: Yes, Your Honor.

THE COURT: It appears to me that that is exactly the kind of knife that we have in this exhibit. Have you examined the knife, [defense counsel]?

[Defense Counsel]: Yes, and, again, just, you know, for purposes of the Record, I would submit to the Court that when Dr. Gilliland testified, objections were raised about her ability to testify to such evidence.

THE COURT: All right. I think clearly Dr. Gilliland has the experience and the knowledge of wounds and things, and that's why I overruled your objection –

Thus, the trial court had the knife physically in its possession when it found as fact that it matched Dr. Gilliland's description of the type of knife that would cause Highsmith's wounds. This evidence is sufficient

to support the trial court's findings regarding the relevance of the knife.

We note that after the trial court ruled that the knife was admissible, Agent Brown testified that it had "some small serrations[.]" However, even if this testimony could be considered to conflict with the trial court's finding regarding the characteristics of the knife, the trial court's finding still stands because it was supported by competent evidence. *See State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) ("[A] trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." (internal quotations and citations omitted)). Ultimately, the trial court's findings support its conclusion that the knife was relevant. While the State's evidence did not establish that the knife that was discovered was definitively the knife used by defendant to murder Highsmith, there was sufficient evidence to establish that the knife could have been used to commit the crime. The other issues raised by defendant regarding the knife "merely go to the weight or probative value of the evidence[,]" rather than its relevance. *State v. DeCastro*, 342 N.C. 667, 682, 467 S.E.2d 653, 660 (1996). Accordingly, defendant's relevance argument is overruled.

### C.  Probative Value and Prejudice

Defendant also contends that the knife should have been excluded under Rule 403, which states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2011). "We review a trial court's decision to exclude evidence under Rule 403 for abuse of discretion." *State v. Whaley*, 362 N.C. 156, 160, 655 S.E.2d 388, 390 (2008). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

In the instant case, we discern no abuse of discretion in the trial court's decision to admit the knife into evidence. The trial court's findings, which are binding on appeal, reflect that the knife could have potentially been the murder weapon. Although this evidence was not substantial, it cannot be said that the court's determination that the knife's probative value was not substantially outweighed by the danger of unfair prejudice to defendant was "manifestly unsupported by reason or . . . so arbitrary that it could not have been the result of a reasoned decision." *Id.* Consequently, this argument is overruled.

## IV. Voluntariness of Defendant's Confession

**[3]** Defendant argues that the trial court erred in denying his motion to suppress the statements defendant made to his wife, Tolvi. Defendant contends that the statements were not voluntary and thus, inadmissible. We disagree.

Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). In addition, this Court may also consider any uncontroverted evidence which was presented at the suppression hearing which would support the trial court's conclusions of law. *State v. Richardson*, 316 N.C. 594, 600, 342 S.E.2d 823, 828 (1986). "The trial court's conclusions of law . . . are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

"The ultimate test of the admissibility of a confession is whether the statement was in fact voluntarily and understandingly made." *State v. Davis*, 305 N.C. 400, 419, 290 S.E.2d 574, 586 (1982). "To be admissible, a defendant's statement must be the product of an essentially free and unconstrained choice by its maker, and the State must show by a preponderance of the evidence that defendant's confession was voluntary." *State v. Wilkerson*, 363 N.C. 382, 431, 683 S.E.2d 174, 204 (2009)(internal quotations and citations omitted). "The voluntariness of a confession is determined by the totality of the circumstances. The proper determination is whether the confession at issue was the product of improperly induced hope or fear." *Gainey*, 355 N.C. at 84, 558 S.E.2d at 471 (internal quotations and citation omitted).

> Factors to be considered in this inquiry are whether defendant was in custody, whether he was deceived, whether his *Miranda* rights were honored, whether he was held incommunicado, the length of the interrogation, whether there were physical threats or shows of violence, whether promises were made to obtain the confession, the familiarity of the declarant with the criminal justice system, and the mental condition of the declarant.

*State v. Hardy*, 339 N.C. 207, 222, 451 S.E.2d 600, 608 (1994)(citations omitted). However, "[t]he presence or absence of one or more of these

factors is not determinative." *State v. Barlow*, 330 N.C. 133, 141, 409 S.E.2d 906, 911 (1991).

In the instant case, the trial court's order included findings on each of Tolvi's five interactions with defendant while defendant was incarcerated at various correctional facilities due to an unrelated conviction. The findings reflect that Agent Brown instructed Tolvi as to the type of information she should seek from defendant. In order to obtain this information, Tolvi did not threaten defendant, but she instead made up certain pieces of evidence which she claimed law enforcement had recovered. Additionally, Tolvi told defendant that law enforcement suspected that she was involved in Highsmith's murder. In response, defendant provided incriminating statements in which he corrected Tolvi's lies regarding the evidence and admitted some of the details of Highsmith's murder.

In arguing that his confession to Tolvi was involuntary, defendant focuses on Tolvi's deception and her emotional appeals to defendant based on these deceptions. However, our Supreme Court has held that

> [t]he use of trickery by police officers in dealing with defendants is not illegal as a matter of law. The general rule in the United States, which this Court adopts, is that while deceptive methods or false statements by police officers are not commendable practices, standing alone they do not render a confession of guilt inadmissible. ... False statements by officers concerning evidence, as contrasted with threats or promises, have been tolerated in confession cases generally, because such statements do not affect the reliability of the confession.

*State v. Jackson*, 308 N.C. 549, 574, 304 S.E.2d 134, 148 (1983) (citations omitted). Thus, standing alone, Tolvi's false statements about the evidence and her fear that she was being implicated in the murder, while certainly deceptive, are not determinative on the issue of voluntariness. *Id.; see also State v. Branch*, 306 N.C. 101, 108, 291 S.E.2d 653, 659 (1982)(Law enforcement officer's statement to the defendant that he would "probably need to check to see if his father had any involvement" with the defendant's crime did not render defendant's subsequent confession involuntary.).

In addition, Tolvi's interactions with defendant did not require a warning under *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966). The United States Supreme Court has specifically held that "[c]onversations between suspects and undercover agents do not

implicate the concerns underlying Miranda." *Illinois v. Perkins*, 496 U.S. 292, 296, 110 L. Ed. 2d 243, 251 (1990). Tolvi's deceptions do not alter this principle, because "Miranda forbids coercion, not mere strategic deception by taking advantage of a suspect's misplaced trust.......Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within Miranda's concerns." *Id.* at 297, 110 L. Ed. 2d at 251.

The remaining evidence from the suppression hearing strongly suggests that defendant's statements were voluntary. Each of defendant's visits with Tolvi lasted only about one hour, and he was free to terminate the visits at any time. In addition, the trial court specifically found that Tolvi made no threats against defendant during any of her visits. Tolvi also made no promises which would have affected the voluntariness of defendant's confession. *See State v. Wallace*, 351 N.C. 481, 520, 528 S.E.2d 326, 350 (2000)("An improper inducement generating hope must promise relief from the criminal charge to which the confession relates, not to any merely collateral advantage." (internal quotations and citation omitted)).

After considering the totality of the circumstances, we hold the trial court's findings and the uncontroverted evidence presented at the suppression hearing support the trial court's conclusion that defendant's confession was voluntary. The preponderance of the evidence demonstrates that defendant's statements to Tolvi were not "the product of improperly induced hope or fear," *Gainey*, 355 N.C. at 84, 558 S.E.2d at 471, but instead resulted from his misplaced trust in her. Accordingly, the trial court did not err in denying defendant's motion to suppress defendant's confession to Tolvi. This argument is overruled.

### V. Conclusion

The trial court properly allowed Durham's prior testimony into evidence under Rule 804(b)(1), and defendant's confrontation rights were not violated by the introduction of her testimony. The trial court did not err by allowing Agent Brown to testify that he had met with Ford multiple times, and that, as a result of those meetings, he searched a field near Andrews Terrace and discovered a knife. The trial court's findings, which are unchallenged on appeal, support its conclusions that the knife was relevant under Rule 401 and not unduly prejudicial under Rule 403. Defendant's confession to his wife was voluntarily made and thus, admissible at trial. Defendant received a fair trial, free from error.

No error.

Judge HUNTER, Robert C. concurs.

Judge HUNTER, Jr., Robert N. concurs in the result.