ARROWOOD, Judge.
Ronald Stuart Space ("defendant") appeals from the denial of his motion to suppress and from judgment entered upon his conviction for impaired driving. For the following reasons, we affirm.
I. Background
At approximately 4:14 in the afternoon on 22 October 2015, defendant was stopped at a checkpoint conducted by the Brunswick County Sheriff's Office ("BCSO"). As a result of the stop, defendant received a citation for impaired driving.
Defendant's case was tried in Brunswick County District Court before the Honorable W. Frederick Gore on 23 May 2016. Defendant was found guilty of impaired driving and appealed to superior court for a trial de novo.
On 25 October 2016, defendant filed a motion to suppress in Brunswick County Superior Court seeking "to suppress any and all evidence obtained arising out of [the] stop of [his] vehicle and [his] subsequent arrest" on grounds that the checkpoint was in substantial violation of N.C. Gen. Stat. § 20-16.3A and unconstitutional. Defendant waived his right to a jury trial and on 23 March 2017, defendant's case was called for trial in Brunswick County Superior Court before the Honorable James G. Bell. The court first considered defendant's motion to suppress. Upon consideration of testimony by Corporal Matt Chism, one of the four BCSO officers who conducted the checkpoint, and the arguments of both sides, the court determined that the "checkpoint was constitutionally established" and denied defendant's motion to suppress.
Defendant's case then proceeded to a bench trial on the impaired driving charge. At the conclusion of the trial, the court found defendant guilty of impaired driving. The court also found mitigating factors and entered judgment sentencing defendant as a level five to 60 days in the custody of the Misdemeanant Confinement Program, suspended on condition that defendant serve 12 months of unsupervised probation, pay costs, a fine, and a community service fee, and complete 24 hours of community service. Defendant filed notices of appeal on 29 March 2017.
II. Discussion
On appeal, defendant argues the trial court erred in denying his motion to suppress and by failing to make findings of fact and conclusions of law when it denied the motion. We are not convinced the trial court erred.
At the outset, we note that defendant did not preserve for appeal his challenge to the trial court's denial of his motion to suppress.
Our Supreme Court has held that a pretrial motion to suppress is a type of motion in limine, State v. Golphin, 352 N.C. 364, 405, 533 S.E.2d 168, 198 (2000), and a "motion in limine is insufficient to preserve for appeal the question of the admissibility of evidence if the defendant fails to further object to that evidence at the time it is offered at trial." State v. Hayes, 350 N.C. 79, 80, 511 S.E.2d 302, 303 (1999) (per curiam) (citations omitted).
State v. Ashworth, --- N.C. App. ----, ----, 790 S.E.2d 173, 176 (2016).
In this case, after the trial court denied defendant's motion to suppress but before the beginning of the trial, the State requested "that all testimony that has been given for the motion be incorporated as part of the testimony for the state's case in chief." Defendant did not object and the court allowed the State's request. Furthermore, although defendant did object to the admission of certain evidence at trial, those objections were not premised on defendant's assertion that the checkpoint was unlawful and evidence obtained as a result of the checkpoint was introduced into evidence at trial without objection. Defendant did renew his motion to suppress and moved to dismiss the impaired driving charge at the close of the State's evidence, but the evidence defendant sought to suppress was already in the record at that point.
Defendant recognizes his failure to object and now contends that if the renewal of his motion to suppress is not sufficient to preserve his argument for appeal, the denial of his motion to suppress amounts to plain error. "[O]ur Supreme Court has held that 'to the extent [a] defendant fail[s] to preserve issues relating to [his] motion to suppress, we review for plain error' if the defendant 'specifically and distinctly assign[s] plain error' on appeal." State v. Powell, --- N.C. App. ----, ----, 800 S.E.2d 745, 748 (2017) (quoting State v. Waring, 364 N.C. 443, 468, 508, 701 S.E.2d 615, 632, 656 (2010), cert. denied, 565 U.S. 832, 132 S. Ct. 132, 181 L.Ed. 2d 53 (2011) ).
For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.
State v. Lawrence, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal citations, quotation marks, and brackets omitted). "The first step under plain error review is, therefore, to determine whether any error occurred at all." State v. Oxendine, --- N.C. App. ----, ----, 783 S.E.2d 286, 292, disc. review denied, --- N.C. ----, 787 S.E.2d 24 (2016).
Generally, our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "In addition, this Court may also consider any uncontroverted evidence which was presented at the suppression hearing which would support the trial court's conclusions of law." State v. Rollins, 226 N.C. App. 129, 144, 738 S.E.2d 440, 451 (2013) (citing State v. Richardson, 316 N.C. 594, 600, 342 S.E.2d 823, 828 (1986) ). "The trial court's conclusions of law ... are fully reviewable on appeal." State v. Hughes, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).
However, like in Powell, the trial court in this case summarily denied defendant's motion to suppress at the conclusion of the suppression hearing without making findings of fact or conclusions of law. See Powell, --- N.C. App. at ----, 800 S.E.2d at 749. Here, the court simply stated, "[a]lright, the Motion to Suppress is denied. The Court finds that the checkpoint was constitutionally established." In Powell, this Court explained as follows:
N.C. Gen. Stat. § 15A-977 states that when ruling on a motion to suppress, "[t]he judge must set forth in the record his findings of facts and conclusions of law." N.C. Gen. Stat. § 15A-977 (2015). However, despite this statutory directive, our Supreme Court has held that "only a material conflict in the evidence-one that potentially affects the outcome of the suppression motion-must be resolved by explicit factual findings that show the basis for the trial court's ruling. When there is no conflict in the evidence, the trial court's findings can be inferred from its decision." State v. Bartlett, 368 N.C. 309, 312, 776 S.E.2d 672, 674 (2015) (internal citations omitted).
--- N.C. App. at ----, 800 S.E.2d at 749. Yet, this Court reiterated in a footnote that, "even in cases where there is no material conflict in the evidence presented, findings of fact are preferred." Id. at ---- n.1, 800 S.E.2d at 749 n.1 (internal quotation marks and citation omitted).
In reviewing whether the checkpoint in the present case was constitutional, we must consider whether there are material conflicts in the evidence.
It is well settled that " '[p]olice officers effectuate a seizure when they stop a vehicle at a checkpoint.' As with all seizures, checkpoints conform with the Fourth Amendment only 'if they are reasonable.' " State v. Rose, 170 N.C. App. 284, 288, 612 S.E.2d 336, 339 (2005) (quoting State v. Mitchell, 358 N.C. 63, 66, 592 S.E.2d 543, 545 (2004) ).
When considering a challenge to a checkpoint, the reviewing court must undertake a two-part inquiry to determine whether the checkpoint meets constitutional requirements. First, the court must determine the primary programmatic purpose of the checkpoint. ... Second, if a court finds that police had a legitimate primary programmatic purpose for conducting a checkpoint, that does not mean the stop is automatically, or even presumptively, constitutional. It simply means that the court must judge its reasonableness, hence, its constitutionality, on the basis of the individual circumstances.
State v. Veazey, 191 N.C. App. 181, 185-86, 662 S.E.2d 683, 686-87 (2008) (internal citations, quotation marks, and brackets omitted).
In the present case, defendant first contends the trial court erred in denying his motion to suppress because it failed to make a finding regarding the primary programmatic purpose of the checkpoint.
Our Court has previously held that where there is no evidence in the record to contradict the State's proffered purpose for a checkpoint, a trial court may rely on the testifying police officer's assertion of a legitimate primary purpose. However, where there is evidence in the record that could support a finding of either a lawful or unlawful purpose, a trial court cannot rely solely on an officer's bare statements as to a checkpoint's purpose. In such cases, the trial court may not simply accept the State's invocation of a proper purpose, but instead must carry out a close review of the scheme at issue. This type of searching inquiry is necessary to ensure that an illegal multi-purpose checkpoint is not made legal by the simple device of assigning the primary purpose to one objective instead of the other.
Id. at 187, 662 S.E.2d at 687-88 (internal citations, quotation marks, and brackets omitted).
In this case, the evidence presented at the suppression hearing included the testimony of Corporal Chism and the "Checking Station Report." In explaining the role of the BCSO's traffic unit, Corporal Chism testified that "[t]he traffic unit does conduct quite a few license checkpoints throughout the county." Corporal Chism further explained that they "get quite a few complaints" in the area where this checkpoint was conducted and "[t]hat's part of the reason that [they] chose to check the licenses in that area." In response to the State's questions concerning the details of the checkpoint, Corporal Chism answered that the primary programmatic purpose for the checkpoint was "Chapter 20 violations" and then specified that they were only asking each driver for their "[d]river's license." On cross-examination, Officer Chism reiterated that he and the other officers predetermined that they "were going to check licenses for an hour." The "Checking Station Report" introduced into evidence supported Corporal Chism's testimony, indicating that the officers were only checking for driver's licenses at the checkpoint. No evidence was introduced to contradict the evidence that the officers were only asking for driver's licenses at the checkpoint.
Defendant contends that because Corporal Chism mentioned Chapter 20 violations, there was a material conflict in the evidence. Defendant also contends that the evidence indicates that the checkpoint was designed to increase police presence in a targeted area, which defendant claims amounts to general crime control. See City of Indianapolis v. Edmond, 531 U.S. 32, 41-42, 148 L.Ed. 2d 333, 343 (2000) (holding checkpoints for purposes of general crime control are unconstitutional). We disagree with both contentions.
Although Corporal Chism did mention Chapter 20 violations, when the testimony is viewed in context, it is evident that Corporal Chism was referring to the complaints the BCSO received about the area where the checkpoint was located and the reason the checkpoint was set up in that area. As detailed above, immediately after Corporal Chism mentioned Chapter 20 violations, he specified that they were only checking for driver's licenses at the checkpoint. There is no evidence to contradict the evidence that the purpose of the checkpoint was to check for driver's licenses. Furthermore, this Court has rejected the argument that "an attempt to increase police presence in an affected area while conducting a checkpoint for a recognized lawful purpose is akin to operating a checkpoint for the general detection of crime." State v. McDonald, 239 N.C. App. 559, 568, 768 S.E.2d 913, 919 (2015) (emphasis omitted). In fact, this Court recognized that "any checkpoint inherently results in the increased presence of law enforcement officers in the subject area." Id. (emphasis omitted).
Because there is no material conflict in the evidence, we hold the trial court did not err in failing to issue a finding regarding the primary programmatic purpose of the checkpoint. It is well established that verifying driver's licenses is a valid purpose for a checkpoint. See Id. at 567, 768 S.E.2d at 919 (citing Rose, 170 N.C. App. at 288, 612 S.E.2d at 339 ).
Defendant further contends that even if the primary programmatic purpose of the checkpoint was valid, the trial court erred in failing to make findings of fact and conclusions of law concerning the reasonableness. Again, we disagree.
To determine whether a checkpoint was reasonable under the Fourth Amendment, a court must weigh the public's interest in the checkpoint against the individual's Fourth Amendment privacy interest. In Brown v. Texas, 443 U.S. 47, 99 S. Ct. 2637, 61 L.Ed. 2d 357 (1979), the United States Supreme Court held that when conducting this balancing inquiry, a court must weigh (1) the gravity of the public concerns served by the seizure, (2) the degree to which the seizure advances the public interest, and (3) the severity of the interference with individual liberty. If, on balance, these factors weigh in favor of the public interest, the checkpoint is reasonable and therefore constitutional.
Veazey, 191 N.C. App. at 186, 662 S.E.2d at 687 (internal citations, quotation marks, and brackets omitted).
This Court has explained that " '[t]he first Brown factor-the gravity of the public concerns served by the seizure-analyzes the importance of the purpose of the checkpoint. This factor is addressed by first identifying the primary programmatic purpose ... and then assessing the importance of the particular stop to the public.' " State v. Jarrett, 203 N.C. App. 675, 679, 692 S.E.2d 420, 425 (2010) (quoting Rose, 170 N.C. App. at 294, 612 S.E.2d at 342 ). "Under the second Brown prong-the degree to which the seizure advanced public interests-the trial court was required to determine 'whether "[t]he police appropriately tailored their checkpoint stops" to fit their primary purpose.' " Id. at 680, 692 S.E.2d at 425 (quoting Veazey, 191 N.C. App. at 191, 662 S.E.2d at 690 (quoting Illinois v. Lidster, 540 U.S. 419, 427, 124 S. Ct. 885, 891, 157 L.Ed. 2d 843, 852 (2004) )). "The final Brown factor to be considered is the severity of the interference with individual liberty. '[C]ourts have consistently required restrictions on the discretion of the officers conducting the checkpoint to ensure that the intrusion on individual liberty is no greater than is necessary to achieve the checkpoint's objectives.' " Id. at 681, 692 S.E.2d at 425 (quoting Veazey, 191 N.C. App. at 192, 662 S.E.2d at 690-91 ). Regarding the second and third prongs, courts have identified a number of non-exclusive factors to be considered. Id. at 680-81, 692 S.E.2d at 425-26.
Defendant does not argue that the balancing of the Brown factors weighed against the validity of the checkpoint, but instead argues only that the trial court erred by failing to make findings of fact on which to base conclusions of law concerning the factors. Because the evidence was uncontradicted and the trial court's findings and conclusions can be inferred from its ruling, we hold the trial court did not err in this instance. See Bartlett, 368 N.C. at 312, 776 S.E.2d at 674 ("When there is no conflict in the evidence, the trial court's findings can be inferred from its decision. Thus, our cases require findings of fact only when there is a material conflict in the evidence[.]") (citation omitted).
Moreover, we note that checkpoints for driver's license verification have been held to advance an important purpose under the first Brown factor and evidence was introduced relating to many of the non-exclusive factors identified under the second and third Brown prongs. Based on the court's ruling that the checkpoint was constitutionally established from the evidence presented, it may be inferred that the court determined the checkpoint was reasonable. The uncontradicted evidence supports the trial court's denial of defendant's motion to suppress.
III. Conclusion
For the reasons discussed, we hold the trial court did not err by denying defendant's motion to suppress.
AFFIRMED.
Report per Rule 30(e).
Judges STROUD and ZACHARY concur.